(53 Misc. Rep. 142.)

### CUMMINGS et al. v. BAILEY et al.

(Supreme Court, Special Term, Kings County. February, 1907.)

ELECTIONS—STATE COMMITTEE—POWERS.

　　The Democratic state committee, which controls the state convention of the party and nominations of public officers made by it, but which has no constitution or by-laws, is under Laws 1899, p. 968, c. 473, elected by delegates from the respective senatorial districts, and an attempted expulsion by the majority of said committee of the representatives of a county is beyond their power and will be enjoined.

Action by Michael J. Cummings and others against Edwin Bailey, Jr., and others to enjoin expulsion of plaintiffs from membership in the Democratic state committee. Judgment for plaintiffs.

Isaac M. Kapper, Luke D. Stapleton, and George W. Martin, Jr., for plaintiffs.

Thomas F. Magner and John F. Carew, for defendants.

KELLY, J. If the state committee as at present organized and constituted is a mere voluntary association, not representative in character, and the right to membership depends upon the action of the body itself, then its members have no right to appeal to the courts to interfere in its management. In that case, to quote from Judge Gray in McKane v. Adams, 123 N. Y. 609, 25 N. E. 1057, 20 Am. St. Rep. 785, membership is a privilege which may be "accorded or withheld and not a right which may be gained independently and then enforced." If, on the other hand, it is a representative body and the plaintiffs are members by reason of their selection by agencies outside the committee itself, if their membership is a right gained independently of the committee, and they are responsible to those electing them for their conduct and only to them, a different rule prevails. People ex rel. Coffey v. Democratic Committee, 164 N. Y. 335, 58 N. E. 124, 51 L. R. A. 674.

The plaintiffs are the members of the state committee representing the various senatorial districts of the county of Kings. They are

the choice of the Democratic voters in that county as expressed at
the primary election of 1906. The procedure with reference to the
election of delegates to state conventions of political parties, and the
formation of state committees, have been the same for many years,
at any rate since the passage of the primary election laws. Laws
1882, p. 188, c. 154; Laws 1883, p. 560, c. 380; Laws 1887, p. 329,
c. 265; Laws 1898, p. 331, c. 179; Laws 1899, p. 968, c. 473. There
is no specific reference by name to either state conventions or state
committees in the present primary law, but the state conventions and
the state committees are the outcome and result of the assembly dis-
trict conventions, and the means by which the will of the voter is car-
ried out. The individual voter selects the members of the assembly
district convention which, in turn, selects delegates to the state con-
vention by senatorial districts, one delegate from each assembly dis-
trict. The delegates representing the assembly districts comprised
in a senatorial district in caucus select a member of the state com-
mittee to represent that district and certify his election to the secre-
tary of the state committee. It all originates at the primary election.
So far as the localities are concerned in which the primary election
law is in force, the representatives of the senatorial districts in those
localities are selected by means of the machinery provided by the law.
The plaintiffs in this case were selected by the Democratic electors
voting at the primary election held in September, 1906, as effectually
as if they had been directly voted to membership in the state com-
mittee at that election. It is in evidence that each of the plaintiffs,
with the exception of Mr. Shea, is a member of the Kings county
Democratic general committee, and was elected a delegate to his
particular assembly district convention at that primary election. With
his fellow delegates to that assembly district convention he selected
the representatives in the state convention by senatorial districts,
and by those representatives he was chosen to represent his senatorial
district in the state committee.

What is the state committee? According to the evidence it has
no written constitution or by-laws. But it is the supreme political
authority of the party in the state. It is conceded by the defendants
on the record in this trial that the state committee has plenary powers,
not only as to the state convention, but that it controls the state con-
vention; that it is the executive body of the Democratic Party in
the state of New York. The state committee, as already suggested,
is not chosen by the state convention. It is elected by the delegates
from the respective senatorial districts. The members of the state
committee may be elected at a different time or place from that ap-
pointed for the holding of a state convention. No power, discretion,
or choice exists, according to the evidence, in the state convention,
or any one else, to reject the choice of the senatorial districts. By
virtue of that choice or selection he becomes a member of the com-
mittee. The witness Mason, secretary of the committee, testified
that, outside of nominating candidates for state officers, perfecting its
own organization, and adopting a platform (which acts are performed
by the State convention), "everything looking toward the govern-
ment of the party, the election of the candidates and the means and

method of doing it is performed by the state committee." But, more than this, the state committee practically controls the state convention and the nominations for office made by that body. The members of the state committee are elected for two years. They issue a call for the state convention. In advance of the meeting of the convention they select temporary officers for that body. These temporary officers select the committee on credentials which, in their turn, controls the seating of delegates. The concession of counsel as to the plenary powers of the state committee was properly made. The committee controls the party convention and the nominations for public office made by the convention. It is in evidence that at the state convention of 1906 it was resolved that no state convention of the Democratic Party should be held in 1907; that the state committee, consisting of the plaintiffs and defendants in this action, should nominate candidates for any state office to be filled at the general election in November, 1907. The state convention knew, and we knew, that one of the offices to be filled at that election, of the utmost importance to the people of the state, a judge of the Court of Appeals, is to be selected. Other important state offices may become vacant by death, resignation, or otherwise. If so, this state committee selects and nominates the candidates of the Democratic electors for those offices. I do not think that such a body should be said to be a mere voluntary association, membership in which is not dependent on outside agencies. As long as the maintenance of political principles are important to the citizen and the welfare of the community, a body with the powers conceded to this committee is of the highest importance. Having in view the method of the selection of its members, its powers, and the results which may flow from its action or inaction, I am free to say that the expulsion of the plaintiffs, the representatives of an entire community as important as the Democracy of Kings county and the substitution in their stead of committeemen selected by the defendants, the majority of the state committee, seems violative of all modern, and what we have grown to believe are better and more representative, methods of political procedure. It is no part of the court's duty to say whether written constitutions or by-laws are necessary or desirable in bodies of this description; but I do assert that, if any such power exists in a body such as this, it ought to be expressly declared in unmistakable terms. The learned counsel for the defendants, on the argument and in his brief, urges that the committee might be compelled to associate with a man who may have "violated every rule of propriety" and "have been guilty of the most indecent conduct." He may "have outraged every rule of civilization." He may be ill "with a contagious or infectious disease so as to make association with him a menace to one's life or health. Yet it is the contention of these plaintiffs, under such circumstances, if they should arise, the committee is powerless to be rid of such a person." This is strong language, and yet the alternative of vesting in a majority of men—human beings and subject to the infirmities of human nature—the unrestricted right to judge these things, to convict a man of these indecencies and outrages, and for that alleged reason to expel him from a representative office, depriving those who have a right to

be represented of representation, and substituting the opinion of the majority, moved by motives which we may not always know, for the opinion of those who know him and deliberately select him to represent them appears to me to be more dangerous to our institutions than the extreme suppositious case presented by the learned counsel for the defendants.

A similar situation to that alleged in the case at bar was before the Court of Appeals in the Coffey Case, supra, and Judge Parker in the prevailing opinion said:

"It has been suggested that it would be intolerable for the members of a general committee to associate with a member who is hostile to the ticket, and that it follows that the Legislature must be presumed to have had such a situation in mind. I answer—without assenting for one moment that the legal conclusion follows from the proposition of fact standing alone—that it does not stand alone; that the Legislature was confronted with what it regarded as an abuse of the rights of the citizens in party matters, which compelled it to decide which was the lesser of two evils, to compel association occasionally with a member who is hostile to some portion of the party candidates or a majority of the committee, or to permit the general committee to deprive the voters of the choice of a representative. It decided that the wrongs that had been and were being done to the primary voters exceeded that which could result from occasional association with a hostile member. In other words, it was determined that the majority of the primary voters were entitled to select any representative they might desire, who should be responsible to those electing him, and only to them, for his conduct in office. That determination should be given effect by the decision of this court agreeably to that well-understood canon of construction that commands the court in construing a statute to give effect to the intention of the legislature."

Any such extreme, arbitrary power as claimed by defendants in their answer should not be asserted without express authority; and to say it exists in a body selected as are our great party committees and with the privileges, powers, and duties devolved on them and exercised by them seems to me to be un-American and opposed to the fundamental principles of government in this country which makes the individuals' right to have a voice in the selection of their representatives sacred and inalienable.

It is true this unrestricted rule by might instead of right prevailed in this community in times gone by. It still prevails in some parts of this state, but it is wrong. It fosters oppression and a long line of evils from which we suffered here in the past. There is no reason for it. A state committee or a state convention may, if it sees fit, adopt a constitution and by-laws providing for all reasonable contingencies; and with such a constitution or law the courts would be slow to interfere. It is in the assumption of authority not prescribed or declared that the danger lies. And how can the danger be exemplified more strongly than in the attempt of a majority to expel the duly accredited representatives of the minority? Not content with the conceded power to control the action of the committee, they, by sheer force, seek to deprive the minority of all representation. If it be said that the Legislature has no right to interfere and prescribe tests for membership in a political party, I think the answer is that we are dealing here with an organization which has voluntarily accepted a statutory method by which it is constituted a representative body, and not a mere voluntary association. The individual voters who went to the polls

in September, 1906, selected their representatives under laws as they then existed. They availed themselves of the statutory forms and paraphernalia of a public election. There is no right in the Legislature to prescribe party principles. There is and can be no legislative prohibition against any number of citizens organizing and declaring their political beliefs and advocating them and electing public officials in accord with their views. But, where a state committee is elected by districts, it can only be for the reason that it represents the views of the electors in the districts; and it cannot, on the spur of the moment, change its representative capacity. This present committee was selected before the state election of 1906. No attempt was made to disfranchise the electors of Kings county by removing their representatives before the election. The Democratic voters in Kings county went to the polls and exercised the franchise without intimation of any intention to remove their entire representation in the councils of the party. Apparently the defendants, the majority of the state committee, did not deem their association with the representatives from Kings county intolerable during the period between the nominations and the election which resulted in the success of all but one of their nominees. This movement to expel the Kings county representatives in the state committee was announced a day or two after the result of the election had been announced. This does not seem to be fair dealing with the individual voter. I do not believe it is lawful, and I think the court should interfere to prevent it.

If the representative character of the state committee be conceded, I think a court of equity has power to interfere with an unlawful attempt to expel a member of such committee. Having in mind the conceded powers of the committee over the destinies of the party, their power to make nominations, and to control the workings of the party machinery, it would not be just to relegate the plaintiffs to a mandamus proceeding or to a suit for reinstatement. During the delays incident to such proceedings, the wrong to the community may be accomplished, the voice of the locality may be stifled, while its representatives are struggling to regain the office from which they have been unlawfully removed. If the proceeding is illegal, it is wrong that these plaintiffs should be forced to submit to the expense and humiliations of a public trial before a self-constituted tribunal, acting without lawful authority. Schuyler v. Curtis, 147 N. Y. 434, 42 N. E. 22, 31 L. R. A. 286, 49 Am. St. Rep. 671. Mr. Justice Herrick said, writing for the Appellate Division in Green Island Ice Co. v. Norton, 105 App. Div. 332, 86 N. Y. Supp. 613, 94 N. Y. Supp. 1147:

"The remedy by injunction is one that is constantly growing and expanding, and injunctions are now granted in cases where formerly the courts would not have thought for a moment of so doing. From time immemorial it has been the rule not to issue an injunction where the party praying for it had an adequate remedy at law, but our ideas of what are adequate remedies are changing, and it is gradually coming to be understood that a system of law which will not prevent the doing of a wrong, but only affords redress after the wrong is committed, is not a complete system, and it is inadequate for the present needs of society, and that, where the rights of the parties are clear, the courts should intervene to prevent a violation of such rights, should prevent the doing

of the wrong in the beginning, instead of allowing such rights to be violated and such wrongs to be done."

From the nature of the accusation, and the violence of the language used with the prayer of the accusers that plaintiffs be expelled, there can be little doubt of the object and result sought. In the papers presented to me on the granting of the preliminary injunction in this case, which was continued by consent of the parties until final judgment after the trial, there were allegations that the majority of the committee had prejudged the case and that the so-called trial was an empty form. It was averred that the chairman of the committee had publicly announced in statements widely published that the plaintiffs were to be expelled. On the trial no direct evidence of this intention was introduced by plaintiffs, nor was any evidence to the contrary offered by defendants. The nature of the proceeding and its obvious outcome is claimed by plaintiffs to be apparent from the intemperate wording of the charges, the acceptance of these charges by the majority of the committee and the appointment of the subcommittee to try the plaintiffs. I think there can be little doubt of the intention of the defendants to expel the plaintiffs on the facts presented, especially in view of the allegation in paragraph 8 of the answer, which reads as follows:

"That these defendants have and claim the right under the Constitution of this state and of the United States to investigate the charges preferred as hereinbefore set forth, and as the Democratic state committee of the state of New York in the exercise of their discretion and judgment, if said charges be deemed established, to curtail the powers of these plaintiffs or to expel them if they so determine."

Quoting from Mr. Justice Herrick, at Special Term (Matter of Broat, 6 Misc. Rep. 445, 27 N. Y. Supp. 176):

"Recent legislation has been such as to bring within the law the action of all party caucuses, conventions, and committees, and subject them to the supervision and control of the courts. It has at last become recognized that, under our form of government, the primaries, caucuses, and conventions of parties should be surrounded by all the safeguards, and be conducted with the same conformity to law that our regular elections should be, and whether they have been so conducted is to be determined by the courts in the same manner as every other controversy that is brought before it. In Matter of Woodworth (Sup.) 16 N. Y. Supp. 147, 152, the court said: 'Where the duty is cast upon courts and judges of determining the regularity and fairness of political methods, those methods must be subjected to the same tests as would those of any other body of men whose good faith is questioned, and no court or judge would be justified in sustaining them when found to be inconsistent with that degree of sound morals which must characterize an ordinary affair of business, even though they be recognized and approved by senatorial and state conventions of the same political organizations.' The trend of public opinion, as well as of legislation, at the present time, appears to be in favor of a radical reform in our political methods, and it is the plain duty of all good citizens, and especially those clothed with judicial authority, to encourage such a sentiment with all the force they can command."

I think the defendants, constituting the majority of the state committee, have no power under existing conditions, without any authority by way of constitution or by-laws, to expel the plaintiffs, representing the Democratic electors of Kings county. I therefore direct judgment for the plaintiffs.

Judgment for plaintiffs.