(60 Misc. Rep. 132.)

PEOPLE ex rel. McCARREN v. DOOLING et al., Election Com'rs.

(Supreme Court, Special Term, Kings County. July, 1908.)

1. ELECTIONS—ELECTION OFFICERS—APPOINTMENT—STATUTORY PROVISIONS.

Under Election Law, Laws 1896, p. 900, c. 909, § 12, as amended by Laws 1901, p. 232, c. 95, and Laws 1904, p. 141, c. 70, passed in pursuance of Const. art. 2, § 6, providing that election officers in the city of New York shall be appointed from lists authenticated and filed by the chairman of the executive committee of the county committee of the party, and that, if more than one list shall be submitted in the name of the same political party, only that list shall be accepted which is authenticated by the officer of the faction or section of the party which was organized as regular by the last preceding state convention of such party, where a list is authenticated and filed by the chairman of the executive committee of the county committee of a party, elected and chosen pursuant to Primary Election Law, Laws 1899, p. 968, c. 473, as amended, and also a list by the chairman of the executive committee of the county committee of the faction or section of the party organized as regular by the last preceding state convention of such party, the election officers must be appointed from the latter list; section 12 making the state convention of the party the judge of the regularity of opposing factions or sections within the party, so far as the appointment of election officers is concerned.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Elections, § 46.]

2. SAME.

Under Primary Election Law, Laws 1899, p. 993, c. 473, § 10, providing that conventions shall decide all questions of contested seats, the duty of the court is to ascertain whether the action of a convention in refusing to seat delegates, deciding that certain contestants were the regularly elected delegates, was authorized, and if the convention had authority, but abused it, the remedy is not with the court, but with the voters.

Application by the people, on the relation of Patrick H. McCarren, for a peremptory writ of mandamus commanding John T. Dooling and others, constituting the board of elections of the city of New York, to appoint the Democratic members of the various boards of election officers in the county of Kings from the lists authenticated and filed by relator, as chairman of the executive committee of the Democratic county committee in the county of Kings. Application denied.

Order reversed 128 App. Div. 1, 112 N. Y. Supp. 71.

Pearsall, Kapper & Pearsall (Isaac M. Kapper, of counsel), for relator.

Francis K. Pendleton, Corp. Counsel (Terence Farley, of counsel), for respondent board of elections.

James C. Church and Lewis L. Delafield, for respondents Williams and Delaney.

· KELLY, J. Section 12 of the election law (chapter 909, p. 900, Laws 1896, as amended by chapter 95, p. 232, Laws 1901, and chapter 70, p. 141, Laws 1904) provides for the appointment of election officers to serve at primary and general elections in the various election districts in the state. The duty of providing such election officers is devolved upon the Legislature by section 6 of article 2 of the Constitution, and the method by which such officers shall be selected is left in the control of the Legislature, subject only to the proviso that in making such appointment each of the principal political par-

ties in the state shall have equal representation. In compliance with the constitutional mandate, and in order to give to each party representation on the election boards, the Legislature provides for the nomination of such officers by the duly accredited representatives of the two principal political parties, such nomination to be made by filing authenticated lists with the appointing power—in the city of New York, the board of elections. It is provided in section 12:

"In the city of New York, such lists shall be authenticated and filed by the chairman of the executive committee of the county committee of the party in the respective counties within such city; in other cities, by the chairman or secretary of the general city committee of such party, if there be such a committee, or if not, then by the corresponding officer of any committee performing the usual functions of a city or county committee: provided however, that if in any city more than one such list be submitted in the name or on behalf of the same political party, only that list can be accepted which is authenticated by the proper officer or officers of the faction or section of such party, which was organized as regular by the last preceding state convention of such party; or, where no such convention has been held within the year, by the proper officer of the faction or section of said party, which, at the time of the filing of said list is recognized as regular by the state committee of such party, which was organized by or pursuant to the direction of the last preceding state convention of such party."

On June 23, 1908, the relator, as the chairman of the executive committee of the county committee of the Democratic Party in Kings county, authenticated a list as required by section 12, and attempted to file it with the board of elections, the statute requiring the filing of such list not later than the 1st day of July in each year; but the board of elections refused to receive or file such list or to appoint the nominees of the relator, upon the ground that the last state convention of the Democratic party had organized as regular a faction or section of the Democratic Party in Kings county of which one George V. S. Williams is chairman. The relator applies for a mandamus compelling the acceptance and filing of the list authenticated by him, and restraining the board of elections from accepting other lists or making appointments therefrom. The faction or section recognized by the state convention has also presented a list authenticated by John H. Delaney, who makes oath that he is the chairman of the executive committee of the county committee of such faction or section.

There is no question that the relator is the chairman of the executive committee of the Democratic county committee in Kings county, regularly elected and chosen pursuant to the provisions of the primary election law (chapter 473, p. 968, Laws 1899, as amended). Neither is there any question that, at the last state convention of the Democratic Party, held in New York City on April 14, 15, and 16, 1908, that body refused to seat the relator and his associates from several of the assembly districts in Kings county as delegates, deciding that certain contestants were the regularly elected delegates to the state convention, or that the convention passed a resolution in the following language:

"Whereas, there are two sections, groups, or factions of the Democratic Party in Kings county, and for the welfare of the party, the stamp or seal of regularity should be placed upon one section, group, or faction, to the end that party harmony may prevail, resolved that this state convention of the

Democratic Party organizes and recognizes as the regular Democratic Party in Kings county the section, group, or faction of the party known as the 'Kings County Democratic Party' of which body George V. S. Williams is chairman of the county general committee, and directs the Democratic state committee and requests all public officials to recognize the said the Kings County Democratic Party as the regular Democratic Party of the county of Kings."

It appears that George V. S. Williams is the chairman of the county committee of an organization known as the "Kings County Democratic Party," which, it is alleged in an affidavit submitted by Mr. Delaney, has maintained a county organization in Kings county since 1906, and which unsuccessfully contested the primary election of March, 1908, with the relator. Mr. Williams, who is named in the resolution of the state convention, submits no affidavit; but Mr. Delaney, who makes the affidavit on behalf of the so-called Kings County Democratic Party, makes oath that the regularity of the primary election and the validity of the returns were contested, not before the courts, but before the state convention, and that the latter body decided against the relator.

I think the question turns entirely upon the interpretation of the language quoted from section 12 of the election law. The Legislature was empowered by the Constitution to prescribe the method by which the election officials should be selected. They could have provided for their selection in many different ways. They have, I think, made the state convention of the party the judge of the regularity of opposing factions or sections within the party in the cities of the state, so far as the nomination or selection of these election officials is concerned. With the wisdom of the method selected the courts have nothing to do. The provision of section 12 appears to be clear. The state convention, for this purpose, is given the power to decide. This section 12, in its present form, was re-enacted by amendment in 1904, five years after the enactment of the primary election law. I cannot agree with the learned counsel for the relator that it is repealed by the primary election law, or that it is inconsistent with the primary election law from a legal standpoint, however anomalous the situation may be of having one legal county organization, supreme and representative in character, in party matters in the locality, and yet put aside in the important matter of selecting election officers by a state convention in favor of a faction defeated at the regular primary election. The Legislature created the county committee and gave it the powers which it possesses. It can take away or limit those powers, and apparently it has done so. It could have provided, if it had seen fit to do so, that the election officers should be nominated or appointed by the state convention. Mr. Justice Gaynor had a similar matter before him in 1896, in People v. Gleason, 18 Misc. Rep. 511, 42 N. Y. Supp. 1084, brought about by a contest between Mayor Gleason, who claimed to represent the regular organization in Long Island City, and a contesting faction which had secured the recognition of the state convention. Judge Gaynor said:

"The scheme of the election law seems to be plain enough. The reference to the party is all the time to state parties. The state party is made up of local sections or segments, being local organizations, all connected with the state

party organization. Local organizations, not connected with the state organization, are not part of the state party. Unity of political faith in state politics is not enough. Actual unity in state party organization is essential. Without the latter, a local organization, however numerous, is not that of the party. It is disconnected from the party, and, in the case of rival local organizations, the statute leaves no room for debate in respect of which is in the party and. which outside."

This decision, as suggested by the learned counsel for the relator, was made before the enactment of the primary election law, which certainly provides methods and machinery for ascertaining definitely who are the representatives of the party in the location where it is in force; but apparently the state convention, by virtue of the express legislative command, is supreme in this matter of nominating the election officials who have charge, not only of the local primaries, but also the election of public officers whose jurisdiction extends to other counties or throughout the state, and this important provision is distinctly re-enacted, although the Legislature knew at the time of the provisions of the primary election law. The policy of the Legislature in looking on the organization of a party in a given locality with reference to its relations to the state organization was also discussed by the General Term in the First Department in 1879 in the contest between the Irving Hall and Tammany Hall organizations. The original act of 1872 (chapter 675, p. 1573, Laws 1872) providing for the appointment of election officers was under examination, and in that case, as in the case before Mr. Justice Gaynor, it was held that the organization and membership of a party must be regarded, not as a legal body, but as a general party organization. People v. Wheeler, 18 Hun, 540. Of course, this was long before the enactment of the election law considered by Judge Gaynor and the primary law of 1899; but the reference to the state as a whole appears to have been continued, and in fact in the primary law it is provided that the term "party" shall apply to any political organization which, at the last preceding election of a Governor, polled at least 10,000 votes for Governor. To say that the primary election law terminates factions, and that there can be no factions or sections in a political party in New York City, is, I think, going further than the law warrants.

Nor are the methods pursued by the state convention before the court for review. It makes no difference whether the court agrees with the procedure by which the relator was ousted or not. The relator insists that it was high-handed and unjust. The respondents indulge in abuse and recriminations against the relator. The duty of the court is to ascertain whether the action of the convention was authorized under the statute. It is not for the court to enact statutes. If the convention had the legal authority and abused it, the remedy is not with the courts but with the voters, who may select other officials to represent them. The Legislature has made the convention the judge of the qualifications and eligibility of its members. "Each convention shall decide all questions of contested seats." Primary Election Law, Laws 1899, p. 993, c. 473, § 10. I repeat that it is not for the courts to say whether this provision is wise or unwise, or whether it is in accord with the policy of "home rule" inaugurated by the

primary law. If they follow the procedure laid down in the statute, the courts cannot interfere. In Cummings v. Bailey, 53 Misc. Rep. 142, 104 N. Y. Supp. 283 (affirmed 120 App. Div. 892, 105 N. Y. Supp. 1112, appeal dismissed in Court of Appeals, April, 1908), the state committee attempted to expel the representatives from Kings county without authority given by statute or by law, and the contemplated action was enjoined. In the Coffey Case, 164 N. Y. 335, 58 N. E. 124, the Legislature having provided for a representative county committee, that body attempted to expel one of its members, and again the action was nullified by the courts, because there was no authority vested in the committee to reject duly elected delegates. The Hahn Case, 124 App. Div. 427, 108 N. Y. Supp. 1051, affirmed 192 N. Y. ——, 85 N. E. 1114, proceeded on the same theory—lack of power in the committee to review the election of its members. In the case at bar the proceedings of the state convention are not under review, the respondents invoke the express language of section 12 of the election law as the legislative authority for the action of the state convention, and I am therefore compelled to deny the application.

The motion for a peremptory writ of mandamus is denied.