(128 App. Div. 1.)

PEOPLE ex rel. McCARREN v. DOOLING et al., Election Com'rs.

(Supreme Court, Appellate Division, Second Department. July 28, 1908.)

1. ELECTIONS—ELECTION OFFICERS—APPOINTMENT—STATUTORY PROVISIONS.
 Election law, Laws 1896, p. 900, c. 909, § 12, as amended by Laws 1897, p. 277, c. 379, Laws 1898, p. 960, c. 335, Laws 1899, p. 1380, c. 630, Laws 1901, p. 232, c. 95, and Laws 1904, p. 141, c. 70, provides that election officers in the city of New York shall be appointed from lists authenticated and filed by the chairman of the executive committee of the county committee of the party, and that, if more than one list shall be submitted in the name of the same political party, only that list shall be accepted which is authenticated by the officer of the faction or section of the party which was organized as regular by the last preceding state convention of such party. Primary Election Law, Laws 1899, p. 991, c. 473, § 9, provides that each party shall have a general committee for each county, except, that in the city of New York there may be, in lieu thereof or in addition thereto, a general committee for each county wholly therein, and that each county or city committee and the officers thereof shall have all the power and perform all the duties, as to the nomination of officers to serve at general elections, conferred on the general committee, the county committee, the city committee, or the officers thereof, given to any party by section 12 of the election law, and that all members of general committees shall be elected at the primary elections on the annual primary day of each year. *Held*, that the chairman of the executive committee of a county committee of a faction or section of a party organized as regular by the state convention could not, perforce of such recognition alone, present a list of election officers to the board of elections, but that such county committee must have been constituted or attempted to be constituted in obedience to the provisions of Primary Election Law, § 9.

2. SAME—"FACTION OR SECTION."
 Where a county committee was not even voted for and made no contest for election as county committeemen at a primary election conducted pursuant to Primary Election Law, Laws 1899, p. 968, c. 473, no "faction or section" was created or existed to give the state convention jurisdiction, within Election Law, Laws 1896, p. 900, c. 909, § 12, as amended by

Laws 1897, p. 277, c. 379, Laws 1898, p. 960, c. 335, Laws 1899, p. 1380, c. 630, Laws 1901, p. 232, c. 95, and Laws 1904, p. 141, c. 70, providing that election officers in the city of New York shall be appointed from lists authenticated and filed by the chairman of the executive committee of the county committee of the party, and that, if more than one list shall be submitted in the name of the same political party, only that list shall be accepted which is authenticated by the officer of the faction or section of the party which was organized as regular by the last preceding state convention of such party.

3. SAME—PRIMARY ELECTIONS—REVIEW BY COURTS.

A party feeling aggrieved by the operation of Primary Election Law, Laws 1899, p. 968, c. 473, may enlist the aid of a court in construing it.

4. SAME.

Under the express provisions of Primary Election Law, Laws 1899, p. 995, c. 473, § 11, any action or neglect of the officers or members of a political convention or committee, or of any inspector, or of any public officer or board, with regard to the right of any person to participate in any primary election, convention, or committee, or to enroll with any party, or with regard to any right given to or duty prescribed for any elector, political committee, political convention, officer, or board by that act, is reviewable by the courts.

Appeal from Special Term, Kings County.

Mandamus by the people, on the relation of Patrick H. McCarren, against John T. Dooling and others, constituting the board of elections of the city of New York, to compel the appointment of the Democratic members of the various boards of election officers in the county of Kings from the list filed by relator. Application denied, and relator appeals. Reversed, and application granted.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

Isaac M. Kapper, for appellant.
James C. Church, for respondent Delaney.
Terence Farley, for respondent board of elections.

RICH, J. The relator is chairman of the executive committee of the county committee which was duly elected at the annual primary election in the year 1907 as the Democratic county committee of Kings county. In June, 1908, as such chairman he filed with the board of elections of the city of New York a duly authenticated list of the inspectors, poll clerks, and ballot clerks for each election district in the county of Kings to represent the Democratic Party in said county on the various boards of election. This list was rejected by the board of elections on the ground that a state convention held subsequent to the election of the county committee had passed the following resolution:

"Whereas, there are two sections, groups, or factions of the Democratic Party in Kings county, and for the welfare of the party the stamp or seal of regularity should be placed upon one section, group, or faction, to the end that party harmony may prevail; resolved, that this state convention of the Democratic Party organizes and recognizes as the regular Democratic Party in Kings county the section, group, or faction of the party known as the 'Kings County Democratic Party' of which body George V. S. Williams is chairman of the county general committee, and directs the Democratic state committee and requests all public officials to recognize the said Kings County Democratic Party as the regular Democratic Party of the county of Kings."

Section 12 of the general election law (Laws 1896, p. 900, c. 909, as amended by chapter 379, p. 277, Laws of 1897, chapter 335, p. 960, Laws of 1898, chapter 630, p. 1380, Laws of 1899, chapter 95, p. 232, Laws of 1901, and chapter 70, p. 141, Laws of 1904) provides that the board of elections of the city of New York and the mayor of each other city shall, on or before the 1st day of September of each year, select and appoint election officers for each election district therein, that each political party entitled to representation may not later than the 1st day of July in each year file with such board or mayor an original list of persons, members of such party, duly qualified to serve as election officers.  The section, however, contains the proviso:

"That if in any city more than one such list be submitted in the name or on behalf of the same political party, only that list can be accepted which is authenticated by the proper officer or officers of the faction or section of such party, which was organized as regular by the last preceding state convention of such party."

It appears that the body of which Mr. Williams is chairman had also filed with the board of elections a list of names of Democrats who were qualified to fill the various positions.  The relator moved at Special Term for a peremptory writ of mandamus directing the commissioners of elections, constituting the board of elections, to accept and appoint from the lists of persons, "members of the Democratic Party," authenticated and filed by him, and this appeal is from the order of the Special Term denying his application.

It is contended by the learned counsel for the respondents that the state convention was the arbitrator between the two factions of the party in Kings county, that its action was final, and the court is without jurisdiction to entertain the application.  We are to deal with these questions.  There is another statute that cannot be overlooked, being chapter 473, p. 968, of the Laws of 1899, the "primary election law."  It is "controlling" on the methods of enrolling the voters of a party in cities and in villages having 5,000 inhabitants or more, on primary elections in cities and villages, and on party conventions in and for any political subdivision of the state.  It was held in Sheehan v. McMahon, 44 App. Div. 63, 60 N. Y. Supp. 452, that in determining the right to authenticate lists of election officers the primary election law and section 12 of the election law must be read together as one general statutory scheme.  Section 9 of the primary election law provides that:

"Each party shall have a general committee for each county, except that in the city of New York there may be, in lieu of, or in addition to, a general committee for each county wholly therein."

And that:

"Each county or city committee and the officers thereof shall have all the power and authority and shall perform all the duties, in respect to the nominations of officers to serve at general elections, conferred upon the general committee, the county committee, the city committee, the executive committee, or the officers thereof, given to any party in such city or county by section 12 of the election law."

The scheme and purpose of the primary election law was to provide for and regulate the party machinery and to prevent corruption.  It

was intended to place responsibility for the party management and party control of a locality in the hands of the duly enrolled electors thereof. As was said by Chief Judge Parker, speaking of this statute for the Court of Appeals in People ex rel. Coffey v. Democratic Com., 164 N. Y. 341, 58 N. E. 124, 126, 51 L. R. A. 674:

"The dominant idea pervading the entire statute is the absolute assurance to the citizen that his wish as to the conduct of the affairs of his party may be expressed through his ballot and thus given effect, whether it be in accord with the wishes of the leaders of his party or not, and that thus shall be put in effective operation, in the primaries. the underlying principle of democracy, which makes the will of an unfettered majority controlling. In other words, the scheme is to permit the voters to construct the organization from the bottom upwards, instead of permitting leaders to construct it from the top downwards."

There can be no doubt as to the power of the Legislature to provide a system for the regulation of the party machinery, and that is precisely what has been done by the statute under consideration. True, there is an apparent inconsistency between section 12 of the election law and section 9 of the primary law, and the two statutes must be read together, and such construction placed upon them as shall give effect to the evident intention of the Legislature. Matter of Deuel, 116 App. Div. 512, 101 N. Y. Supp. 1037. With this rule in mind there can be but little doubt as to what that intention was. Section 12 was originally enacted with the proviso quoted in 1896, while the primary law was enacted in 1898 and expressly repealed all acts and parts of acts inconsistent with its provision. This operated, in my opinion (although all of my Brethren do not unite in this expression), as an express repeal of the proviso of section 12 of the election law, notwithstanding the fact that the proviso was permitted to remain as originally enacted in the subsequent amendments. I find myself, therefore, unable to agree with the learned justice at Special Term that the section was re-enacted with the proviso after the passage of the primary law. The Legislature could not have so intended. Such a thing would have rendered the primary law nugatory.

But if section 12 of the election law is not repealed or is not made inoperative by the primary law, but is to be read with it, it must be harmonized with the primary law. Now, the primary law in section 9 provides:

"Each county or city committee and the officers thereof shall have all the power and authority and shall perform all the duties. in respect to the nominations of officers to serve at general elections, conferred upon the general committee, the county committee, the city committee, the executive committee, or the officers thereof, given to any party in such city or county by section twelve of the election law."

And the same section prescribes:

"All members of general committees, and assembly district and ward committees, chosen in or from cities of the first class except as otherwise herein provided, shall be elected at the primary elections, on the annual primary day of each year."

Even if, in the eye of the law, there was a faction or a section constituted by that body headed by Mr. Williams which was recognized

by the state convention, that faction or section, perforce of such recognition alone, cannot present a list of election officers to the board of elections; for that list in any event must either be authenticated and filed by the chairman of the executive committee of the county committee (section 12, Election Law), or by the committee (section 9, Primary Law). But the primary law prescribes how the county committee is to be constituted, namely, by election at the primary election on the annual primary day of each year. It is not shown by the body headed by Mr. Williams that the list is filed by the chairman of any executive committee of a county committee thus constituted or attempted to be thus constituted. It surely cannot be contended that the recognition of "a faction" as regular by the state convention absolves ipso facto that body from compliance with the primary law in the constitution of stated committees. If this were so, then this mere recognition of regularity might permit such body to constitute its committee in any manner it chose. Before this body could successfully contend that it had a county committee, it must have at least attempted to constitute such a committee in the manner prescribed by law. It could have named committeemen for election at the primary election on the annual primary day, and whatever the result, so far as the number of votes returned, there might then have been force in their position that the "faction" recognized as regular by the state convention had chosen a regular Democratic county committee, which might be recognized as such committee despite the fact that a majority of votes cast appeared to elect other persons, or at least they had thus complied with the requirements of the primary law so far as it lay in their power. This body, indeed, did present a ticket at the primaries for the state convention, and succeeded in having many of its nominees declared members of the state convention, despite the face of the returns. But we fail to find any satisfactory showing in the record that Mr. Delaney, who filed this list with the board of elections, was the chairman of the executive committee of a county general committee, or represented a county general committee, which was constituted or sought to be constituted in obedience to the positive provisions of the primary law cited. A "faction" stamped as regular has no prerogative above the law, and it must be "regular" in its observance of the law, as well as "regular" within the recognition of the state convention.

Regardless of previous discussion, we would, if necessary, put our decision upon another ground alone. The county committee represented by relator was elected at a primary election conducted at great expense to the city, and it is not contended that the committee represented by Mr. Williams were ever even voted for, or made any contest for election, as county committeemen at the primaries of 1907, and no "faction, group, or section," in the meaning of the election law, was created or existed for the purpose of presenting the matter to the state convention to give it jurisdiction. The party treachery alleged to have been committed in the election of 1906 by the Democratic committee of that year all occurred prior to the holding of the primaries of 1907. Those primaries were held in pursuance of law, and the result was acquiesced in to the extent of holding the primaries of 1908

under the auspices of the committee chosen in 1907. The state convention heard various contests over the election of state delegates to the convention of 1908, and admitted some of the delegates of the Williams body; but that did not, even by implication, create a contest or a faction or section growing out of the primaries of 1907, and the mere statement or declaration of the state convention in a resolution that there is a contest or faction does not create the one or the other. The precise object of the primary law was to do away with the arbitrary power of men, and apply the time-honored maxim that "this is a government of laws, and not of men."

In reference to the suggestion as to the authority of the court, it is only necessary to say that the Legislature has regulated the conduct of primaries by statute, and any party feeling himself aggrieved by its operation may enlist the aid of the court in construing it, and, besides this, the act itself (section 11) expressly vests such authority in the court..

The order of the Special Term must be reversed and the prayer of the petitioner granted, with $10 costs and disbursements.

WOODWARD, JENKS, and HOOKER, JJ., concur.

GAYNOR, J. At the last state convention of the Democratic Party, held in June of this year, contesting delegates presented themselves purporting to be accredited from two organizations in Kings county, respectively, each calling itself the Democratic Party in Kings county. The convention admitted the delegates of one of them, and also passed a resolution that whereas there were two sections, groups or factions of the Democratic Party in Kings county, it "organizes and recognizes" that one as the regular Democratic Party in Kings county. Each of these organizations has now by the chairman of the executive committee of its county committee certified to the board of elections of the city of New York a list of names of persons for appointment as inspectors of election by that board, as provided by section 12 of the election law. That section also provides that if—

"more than one such list be submitted in the name or on behalf of the same political party, only that list can be accepted which is authenticated by the proper officer or officers of the faction or section of such party, which was organized as regular by the last preceding state convention of such party."

The election law existed before the primary law, but unless it is not possible for factions to exist under the primary law, the provision quoted in the foregoing was not shorn of application by the enactment of the primary law. If factions may arise notwithstanding the primary law, then the said provision still has force and application; and I think no one who considers the question can fail to see that factions may still arise. If, for instance, a party's county committee should withdraw from the party by supporting the state candidates of the opposite party, it would no longer be regular but only factional at best, and the state convention, which concededly is the sole judge of the party faith and principles, could cast its delegates out, and recognize another faction in its stead; and that is what was done in the

present case. Instead of leaving the board of elections to determine which faction is the regular one, or the most regular, or select one of them, in the case of lists for inspectors purporting to be certified to it by different organizations, the election law provides, as has been seen, that it shall follow the determination on that subject made by the last state convention. And the courts are without power to review or nullify such determination of the state convention. The first section of the primary law excludes its application from state conventions. If the primary law made the determination of the state convention reviewable by the courts, then they could inquire as to whether factions really existed, and if not, set at naught such determination. Concededly the courts had no such power prior to the passage of the primary law, and it must be conceded they have it not now, unless the primary law confers it, and concededly it does not. By providing that the state convention may decide between contending factions, and organize and recognize one as regular, section 12 of the election law necessarily confers on the state convention power to decide what a faction is, and that factions exist. The courts have no power to define a faction, or construe the said laws for the purpose of defining a faction, in order to decide that there were no factions before the state convention. That question is left now, as it always has been in this state, to the convention itself. That the county committee of the faction or organization discarded by the state convention was regularly elected in 1907, makes no difference. The organization was outlawed, so to speak, by the determination of the state convention, as a whole and in all of its parts.

While these are my views, they are not shared by a majority of the court, and I yield my judgment to theirs.; the more willingly as I expressed the same views in the case of People v. Gleason, 18 Misc. Rep. 511, 42 N. Y. Supp. 1084, several years ago, and mistrust that for that reason I may be unduly tenacious of them now.