■ In the Matter of ROBERT BATTIPAGLIA, Petitioner, against EXECUTIVE COMMITTEE OF THE DEMOCRATIC COUNTY COMMITTEE OF THE COUNTY OF QUEENS, by WARREN J. O'BRIEN, its Treasurer, et al., Respondents.—Proceeding pursuant to article 78 of the Civil Practice Act to review determinations of the Executive Committee of the Democratic County Committee of the County of Queens which (a) revoked petitioner's powers as chairman of said committee on May 25, 1959, and (b) removed him as such chairman on July 2, 1959.

The proceeding was transferred to this court on August 21, 1959 (Civ. Prac. Act, § 1296). Proceeding dismissed, without costs. On September 8, 1958 petitioner was elected Chairman of the Executive Committee of the Democratic County Committee of the County of Queens. Subdivision 5 of rule X of the Rules of the Democratic County Committee of the County of Queens provides that the powers of the Chairman of the Executive Committee may be withdrawn by "majority vote of the Executive Members in meeting assembled." On May 25, 1959 petitioner's powers as chairman were revoked. Subdivision 1 of rule XI of the said rules provides that officers of the Executive Committee may be removed for cause. On July 2, 1959, after a hearing on five charges, each of which the Executive Committee considered to have constituted cause, petitioner was found guilty of each charge and was removed as Chairman of the Executive Committee. The five specifications of which petitioner was found guilty fall into three categories: (1) he failed to call a meeting of the Executive Committee at least once every three months between September 9, 1958 and Dcember 29, 1958, as required by subdivision 1 of rule X of the said rules, (2) he failed to call meetings for April 30, 1959 and May 25, 1959, although duly requested so to do, as required by subdivision 2 of rule X of the said rules, (3) he not only failed to support the candidacy of the person recommended by a majority of the Executive Committee at the meeting of April 30, 1959 for designation as candidate for office at the primary election to be held on September 15, 1959, but publicly espoused the candidacy of another. The pleadings in this proceeding raise issues of fact with respect to the first two of the above categories of specifications. However, the record discloses beyond doubt the existence of the facts with respect to the third category, i.e., that petitioner, in disregard of the vote of the majority of the Executive Committee at a meeting duly called pursuant to the said Rules, publicly supported, in his capacity as chairman, a candidate in opposition to the candidate recommended by such majority. In this proceeding only issues of law are raised with respect to the third category. In our opinion, the Executive Committee could properly determine that guilt of the charges in that category constituted sufficient cause to warrant removal as chairman. Under the circumstances, it is not necessary to review the resolution of May 25, 1959. Nolan, P. J., Wenzel, Beldock and Murphy, JJ., concur; Ughetta, J., dissents and votes to grant the petition, with the following memorandum: The admitted and undisputed facts in the record give rise to only one basic issue of law in this proceeding. Such issue is whether the majority of the Executive Committee of the Democratic County Committee of the County of Queens is empowered to remove the chairman of such Executive Committee from his position as chairman by reason of the fact that, for the office of President of the Borough of Queens, he openly advocated the designation and the nomination by the enrolled members of the Democratic party, at a forthcoming primary election, of a person other than the one recommended by such majority. Stated otherwise, the issue is whether the majority of a party's executive committee may depose its chairman solely because he has become a dissident minority and has persisted in his opposition to the majority's decision to recommend to the enrolled members of the party that, at the next primary election, they should designate and vote for a certain individual as the party's nominee for a public office. The executive committee is merely a subcommittee of the county committee of a political party, and they are both created pursuant to statutory authorization (Election Law, §§ 14, 15). The Rules of the Democratic County Committee of the County of Queens, adopted pursuant to such statute, provide that "officers of the Executive Committee and Executive Members may be removed from office

*for cause* " (rule XI, subd. 1 [*emphasis supplied*]). The specific nature of the cause warranting removal is not set forth, except that in subdivision 4 of the same rule it is stated that " Any officer or member of the Executive Committee who supports for public office a nominee in opposition to a nominee of the Democratic Party may be removed from such committee by a majority vote of its members." Obviously, one who has been merely recommended as the party nominee, whether such recommendation be by the majority or by the minority of the executive committee or of the county committee, becomes the party's nominee only after he has been duly designated for the party nomination by a sufficient number of the enrolled members of the party and (in the event of a contest for the party nomination) only after he has been elected by such enrolled voters at the primary election of the party. Whatever practical influence or consequence the recommendation of a particular committee, or of any group or person within or without the committee, may have upon the enrolled members of the party, such recommendation nevertheless has no obligatory force or legal consequence. For it is the enrolled members of a party who legally are entitled to control it and who legally are empowered to designate its candidates for public office, regardless of the wishes of the party leaders or committee chairmen or committee members (cf. *Theofel* v. *Butler,* 134 Misc. 259, 263–264, affd. 227 App. Div. 626; *People ex rel. McCarren* v. *Dooling,* 128 App. Div. 1, 4–5; *People ex rel. Coffey* v. *Democratic Gen. Committee of Kings County,* 164 N. Y. 335, 340–345). The statutory scheme with respect to the control of all political parties, as stated in the case last cited and oft repeated, " is to permit the voters to construct the organization from the bottom upwards, instead of permitting leaders to construct it from the top downwards " (p. 342). The rivalry among competing candidates for party nomination and the consequent hostility and friction between opposing factions pending the designation and election of candidates for such nomination, are inherent in the statutory scheme of political party organization and serve to give it strength and vitality (*People ex rel. Coffey* v. *Democratic Gen. Committee of Kings County, supra;* cf. *Cummings* v. *Bailey,* 53 Misc. 142, 146–147, affd. 120 App. Div. 892). Such rivalry and competition are to be rewarded and encouraged, not penalized. Whatever the party position of one who engages in an internal contest for party nomination — whether he be an officer or member of the executive committee or county committee — *until the enrolled voters of the party have acted* he has the absolute right to sponsor a candidate in opposition to the one sponsored by a majority of either the executive committee or the county committee. He has this unqualified right in common with every other enrolled party member. He does not forfeit it by reason of his party position as chairman or as member of any party committee. And in the exercise of such right he cannot, and he need not, divest himself of his party title or position. For no matter how he may describe himself it is clear that he is acting as an individual in opposition to the majority of the committee. In thus pursuing his personal course of action the committee officer does not frustrate or render less effective the recommendation of the majority of his committee. That recommendation subsists unimpaired and unchallenged *as the majority's recommendation.* Its efficacy as such is best attested by the fact that here, in the ensuing primary election held September 15, 1959, the majority of the enrolled party members who voted selected as the party's nominee for the office of President of the Borough of Queens the person recommended by the majority of the Executive Committee. Indeed, any rule or holding which would stifle or prevent any enrolled party member, whether or not he holds a party position, from engaging in such political rivalry

and competition within the party prior to the selection of its candidates for public office in the primary election, would be deemed contrary to the fundamental public policy of the State and therefore void (cf. *Matter of Gallagher* v. *American Legion,* 154 Misc. 281; *Stein* v. *Marks,* 44 Misc. 140, 148; *Spayd* v. *Ringing Rock Lodge,* 270 Pa. 67, note, 14 A. L. R. 1446). In any event, it may well be said that the Rules of the County Committee regulating the removal of officers of its Executive Committee, if fairly construed, do not have any such purpose or intent. Reading together subdivisions 1 and 4 of rule XI (heretofore quoted in part), it would appear that the contemplated cause for removal is not the party committee officer's support of a potential nominee of the party in opposition to the choice made by the majority of the Executive Committee, but rather the officer's support of a nominee of *another political party after* the enrolled voters of his party, at the primary election, have actually nominated their candidate. Such support by a committee officer *of the opposition party's* candidate plainly would constitute "disloyalty to the party" in which he is an officer of its executive committee. So construed, the rules are consistent with the statute which authorizes removal of a "member of a party committee ° ° ° for disloyalty to the party" (Election Law, § 16). Of course, the removal of one as a member of the executive committee would automatically vacate his office as chairman of such committee. From what has been said it is clear that a committee officer or a committee member, although he unquestionably owes a duty of loyalty to his party, does not owe a duty of loyalty to the majority of his committee in the sense that he must render obeisance to them so as to assure unanimity of action by the committee. The basic purpose of having a multi-member committee is to stimulate contrariety of thought. For that reason, majority and minority recommendations by different members of a committee are a common occurrence in every organization. Such recommendations serve to enlighten all the members of the organization and enable them to make a more intelligent choice. Here, if unanimity by the committee members were a prerequisite to political action by the party members, the statute (Election Law) would command it. Instead, both the Election Law and the rules made pursuant thereto prescribe only certain majorities, thus leaving to every dissident party member, regardless of his party position, complete freedom to support any person for designation and nomination as the party's candidate by the enrolled voters of the party. This construction of the Rules is in accord with the fundamental purpose of the statute regulating party organization and primary elections. Any other construction would render the Rules invalid. Hence, even if the rules be deemed ambiguous, the interpretation which renders them valid is always to be adopted in preference to the interpretation which renders them invalid. Finally, it should be noted that if the Rules of the County Committee had prescribed that the Chairman of the Executive Committee may be removed by a majority "without cause", then the majority of this court would be right in dismissing the proceeding. But here the rules specify that there *must be cause* for the removal — and, as indicated by the cited cases, the exercise of a statutory or constitutional right can never be deemed cause for removal from office unless the statute or constitution itself should so prescribe.