MONROE R. DAVIS, on Behalf of Himself and All Others Similarly Situated, et al., Respondents, v SULLIVAN COUNTY DEMOCRATIC COMMITTEE et al., Appellants.

Third Department, July 7, 1977

*George Rosen* for appellants.

*Monroe R. Davis,* respondent *pro se.*

*Stephen L. Oppenheim,* respondent *pro se.*

GREENBLOTT, J. P. Subdivision 1 of section 12 of the Election Law provides in part as follows: "The county committee of each party shall be constituted by the election in each election district within such county of at least two members and of such additional members, not in excess of two, as the rules of the county committee of the party within the county or the statement filed pursuant to section eighteen may provide for such district, proportional to the party vote in the district for governor at the last preceding gubernatorial election, or in case the boundaries of such district have been changed or a new district has been created since the last preceding gubernatorial election, proportional to the party vote cast for members of assembly or in the event there was no election for member of assembly, then proportional to the party enrollment in such district at the last preceding general election. In

a county in which no additional members are provided for by the rules of the county committee or the statement filed pursuant to section eighteen the voting power of each member shall be in proportion to such party vote. In a county in which additional members are so provided for, on the basis of the party vote in election districts, or from assembly districts, or portions thereof within such county, each member shall have one vote. Each member of a county committee shall be an enrolled voter of the party residing in the county and the assembly district from which or in the assembly district containing the election district in which such member is elected."

The statute thus establishes two methods for constituting the membership of a county committee, one in which two members are elected from each election district, and one in which additional members not in excess of two may be elected from each election district in proportion to the party vote in the district for Governor or for certain other elective offices in specified situations. Pursuant to the second sentence of the subdivision where no additional members are to be elected, the voting power of each member is to be in proportion to such party vote as heretofore described. The defendant Sullivan County Democratic Committee provides by rule for the election of two members per election district, with no additional members, wherefore the second sentence of subdivision 1 should apply. However, defendant's rules provide for such weighted voting only in selecting party nominees but not with regard to its voting on "internal" party matters. The statute makes no distinction, requiring such weighted voting without excepting any category or subject matter.

Defendants' main contention is that subdivision 1 of section 12 of the Election Law is unconstitutional. They base their argument upon the decision of the United States Court of Appeals for the Second Circuit in *Seergy v Kings County Republican County Committee* (459 F2d 308). We have carefully examined *Seergy* and find its rationale to be inapposite to the case at bar. In *Seergy,* the political committee whose rules were scrutinized, had adopted the alternative method available under subdivision 1 of section 12, to wit, the election of two members per district plus additional members not in excess of two in proportion to the party vote. As set forth in the third sentence of subdivision 1, committee members in such a case were to have one vote apiece, rather than a vote

in proportion to the party vote as provided in the second sentence. The court properly came to the conclusion that such a system did not in fact provide for voting in proportion to the party vote because of the narrow numerical range of members (minimum two, maximum four) who could be elected to represent an election district. The court therefore adjudged that insofar as the statute affected voting on matters relating to selection of nominees, the "one man, one vote" principle enunciated in the Federal Constitution was violated. The *Seergy* decision did not determine the constitutionality of a voting system which, as in the present case, is weighted so as to provide for proportional representation.

The court in *Seergy* went on to note that the Federal Constitution does not necessarily require application of the "one man, one vote" principle to internal party matters, but nothing in that decision, or in any other decision under the Federal or State Constitutions to which our attention has been drawn, indicates that the "one man, one vote" principle may not be properly applied to internal party matters. As noted by the court at Special Term in the case at bar: "If the Legislature reasonably determines to impose weighted voting upon a county committee, it has the power and the right to do so. The Election Law itself contains many sections regulating and controlling the internal functions and management of political parties. The origin of the Election Law itself is founded on the power of the Legislature to provide a system for the regulation of the party machinery. *(People ex rel. McCarren v Dooling,* 128 App Div 1, affd 193 NY 604.)* The cases upholding various sections of the Election Law regulating internal party matters are numerous and span almost every conceivable aspect of the inner party workings. It is clear from the above that the Legislature had a compelling State interest in the conduct of the county committees of political parties and reasonable legislation regulating such committees is valid and constitutional. *(People v Arlen Serv. Stations,* 284 NY 340.)" With this analysis we are in full agreement.

Defendants go on to argue that the statute works an unconstitutional disenfranchisement of enrolled party members in that the weighted voting system is based upon the vote for an elective office, rather than upon actual party enrollment. Defendants' own earlier argument that the "one man, one vote" principle is not constitutionally required to be applied to internal party matters, with which we do not disagree, is in

itself sufficient to defeat the claim of disenfranchisement as applied to such internal matters. However, as we have previously noted, the statute does not make a distinction between selection of nominees and internal affairs, wherefore we must determine whether application of the weighted voting method to defendants is so out of harmony with the principle of "one man, one vote" as to be invalid under constitutional strictures.

We conclude that the method of apportionment established by the second sentence of subdivision 1 has not been shown to be violative of constitutional standards. While it may be true that apportionment by party enrollment rather than by the popular vote for an elective office might be preferable, this does not mean that the legislative scheme as enacted is without rational basis. The Legislature is empowered, we believe, to act upon the assumption that the proportionate party vote for a public office in various election districts within a county bears a sufficiently substantial and direct mathematical relationship to the proportionate party enrollment in the various election districts so as to provide a satisfactory formula for weighing the votes of committee members. One who would challenge such a legislative presumption bears the burden of doing so on the basis of proven facts and not merely conclusory allegations which are unsupported by any underlying factual averments. Here defendants have done nothing more than allege disenfranchisement without setting forth specific facts in support of the conclusion they would have us reach. As the court in *Seergy* noted, "the rule of 'one-man, one-vote,' need not be applied with mathematical precision" (459 F2d 308, 314, *supra*). Defendants set forth nothing to indicate that any deviations from mathematical exactitude which might result from application of the statute as written would be of such a magnitude as to be unable to withstand constitutional scrutiny.

We have examined the remainder of defendants' contentions and find them to be without merit.

The order should be affirmed, with costs.

MAHONEY, J. (dissenting). We dissent.

The Sullivan County Democratic Committee is a functionary of the national Democratic Party. That party is an association founded to further certain political objectives. The county committee consists of two members from each election district, and the by-laws provide that: "each member of the committee

shall have one vote on all matters that may come before a meeting of the committee [except that] in all matters which shall involve the nomination or designation of candidates for public office or for the designation, appointment, or election of delegates to a party convention for the nomination of candidates for public office to be filled by the voters at an election, each [committeeman] shall cast votes [in proportion to] the number of votes received by the Democratic Party candidate for governor in the last preceding gubernatorial election in the district represented by such member". Conceding for the sake of argument that the majority correctly interprets section 12 of the Election Law to require this method of weighted voting on all matters before the committee, we find the statute to unjustifiably impair the defendants' Federal constitutional right to freedom of association (US Const, 1st and 14th Amdts.; see, also, NY Const, art I § 9).

In *Kusper v Pontikes* (414 US 51), the court struck down an Illinois statute prohibiting a person from voting in a primary election of a political party if he had voted in the primary of another party within the preceding 23 months. The court stated that (pp 56-57):

"freedom to associate with others for the common advancement of political beliefs and ideas is a form of 'orderly group activity' protected by the First and Fourteenth Amendments. [Citations omitted.] The right to associate with the political party of one's choice is an integral part of this basic constitutional freedom. [Citations omitted.]

"To be sure, administration of the electoral process is a matter that the Constitution largely entrusts to the States. But, in exercising their powers of supervision over elections and in setting qualifications for voters, the States may not infringe upon basic constitutional protections. [Citations and footnote omitted.]"

New York has undertaken to administer the electoral process, and in so doing has necessarily imposed certain procedures upon the political parties (Election Law, art 2). The question becomes whether the weighted voting procedures of section 12 impinge on freedom of association and, if so, whether the impingement may be justified as in furtherance of a State interest.

First Amendment protection encompasses the right to participate in organized party politics *(Kusper v Pontikes, supra)*. The extent to which the constitutional protection limits the

power of the State to regulate party voting rules and procedures was considered by the court in *Cousins v Wigoda* (419 US 477). In the Chicago Democratic primary election of March, 1972, 59 delegates *(Wigoda* group) to the party's national convention were elected. These delegates were challenged by a group selected by caucus *(Cousins* delegation) before the national Democratic credentials committee on the ground that certain party slate-making rules had been violated in electing the *Wigoda* group. The committee ruled that the *Cousins* group should be seated, whereupon those unseated obtained an order from the Illinois State courts enjoining the *Cousins* group from participating in the convention. The State court reasoned that the *Wigoda* group had been properly elected pursuant to the Illinois Election Code and that the "law of the state is supreme and party rules to the contrary are of no effect." (14 Ill App 3d 460, 475.)

The Supreme Court reversed, holding that (pp 489-491)

"[e]ven though legitimate, the ' "subordinating interest of the State must be compelling" * * *' to justify the injunction's abridgment of the exercise by [the Cousins group] and the National Democratic Party of their constitutionally protected rights of association [citation omitted].

"[The Wigoda group] argue[s] that Illinois had a compelling interest in protecting the integrity of its electoral processes and the right of its citizens * * * to effective suffrage * * *. But [the Wigoda group] overlook[s] the significant fact that the suffrage was exercised at the primary election to elect delegates to a National Party Convention. * * * The States themselves have no constitutionally mandated role in the great task of the selection of Presidential and Vice Presidential candidates. If the qualifications and eligibility of delegates to National Political Party Conventions were left to state law 'each of the fifty states could establish the qualifications of its delegates to the various party conventions without regard to party policy, an obviously intolerable result.' [Citation omitted.]

"Thus, Illinois' interest in protecting the integrity of its electoral process cannot be deemed compelling in the context of the selection of delegates to the National Party Convention."

The case at bar presents what is potentially a greater interference with the right to political association. In the *Wigoda* case the State court order sought to enforce the will of

registered Chicago Democrats as expressed in a primary vote. The Supreme Court reversed, saying it was for the *party* to decide which delegation to seat. Here the State, through section 12 of the Election Law, unilaterally imposes a method of voting which is neither the will of the Democrats of Sullivan County nor in furtherance of any discernible State purpose.

The committeemen's votes are weighted, not in proportion to the number of registered Democrats in the various districts, but in proportion to the Democratic vote in the preceding gubernatorial election. Thus, for example, if Republicans and independents constituted a high proportion of the voters in a particular district, they would, by voting for the Democratic candidate for Governor, vest the few Democrats in the district with disproportionate influence in Democratic Party decisions. Imposition of this voting procedure interferes with the very power of the party to define its membership, since influence in party decision-making becomes a function, not of registered membership in the party, but, in part, of the voting choices of Republicans and independents. Erosion of the party's power to define its membership also erodes its ability to make policy decisions and therefore goes to the essence of the freedom of association and can be justified only by some compelling State interest *(Cousins v Wigoda, supra)*.

It is difficult to see any interest in imposing such a distorted method of voting, much less a compelling one. Moreover, once infringement upon the freedom of association is demonstrated, the burden is on the party seeking to enforce the statute to establish a compelling State interest (cf. *Buckley v Valeo,* 424 US 1, 25). No such interest has been established on the record herein.

The parties on this appeal dispute only whether the committee must use the statutory method of weighted voting with respect to "internal" party matters. It is, therefore, not necessary to decide whether the committee could, if it wished, vote without weighted votes on "external" matters, such as the nomination of candidates.

The order should be reversed, and the complaint dismissed.

LARKIN and MAIN, JJ., concur with GREENBLOTT, J. P.; MAHONEY and HERLIHY, JJ., dissent and vote to reverse in an opinion by MAHONEY, J.*

---

* Subsequent to the argument in this case, Mr. Justice KANE disqualified himself, and the court has vouched in Mr. Justice LARKIN.

Order affirmed, with costs.