JOHN THEOFEL, Plaintiff, *v.* JAMES BUTLER, Defendant.

Supreme Court, Queens County, May 22, 1929.

*Thomas Downs*, for the plaintiff.

*Frederic S. Marsell*, for the defendant.

DRUHAN, J. The plaintiff and the defendant are enrolled voters of the Democratic party in Queens county. At the primary election which was held on April 3, 1928, both gentlemen were elected members of the county committee. Within fifteen days thereafter the committee met and organized. At such meeting the defendant was elected chairman of the committee, other officers were selected, and rules, which were deemed appropriate for the government of the party within the county, were adopted. It may be presumed that within three days thereafter certificates to that effect as required by the statute were filed with the Secretary of State and the board of elections of the county. The rules in question, among other things, provide that " the chairman of the county committee shall appoint all *standing* and special committees and issue all calls for meetings of the county committee " (Rule IV).

The important standing committee of the county committee, as will be seen, is the executive committee, consisting " of the chairman of the county committee and *six* members from each assembly

district within the county of Queens." It is provided that " the chairman of the county committee may in his discretion appoint *three* additional members of said executive committee from each assembly district *who need not necessarily be members of the county committee.*" It is also provided that ".the executive committee shall elect its own chairman and such other officers as it may deem proper and necessary " (Rule V).

The executive committee, which was appointed by the chairman of the county committee immediately after his election as such chairman, consists of eighteen men and eighteen women who, with the chairman of the county committee, constitute a committee of thirty-seven members (papers on appeal, *Powers* v. *Theofel,* 226 App. Div. 696). When the executive committee as thus appointed was organized Mason O. Smedley was elected chairman. Thereafter Mr. Smedley resigned as chairman of the executive committee and at a meeting of that committee which was held on November 26, 1928, the plaintiff was elected chairman to succeed Mr. Smedley. At a meeting of the county committee which had been held on October 31, 1928, an attempt was made to amend the rules so as to provide for the appointment of an executive committee of that body to consist of sixty members. But the Appellate Division in the Second Department held that the rules thus adopted were invalid, the court saying: " In our opinion the action may be maintained. (*Brown* v. *Cole,* 54 Misc. 278; *Cummings* v. *Bailey,* 53 id. 142; affd., 120 App. Div. 892.) The record shows that the amended rules of the Democratic county committee of Queens county were not adopted by a majority of that committee as required by section 15 of the Election Law. They are, therefore, invalid and their enforcement may be enjoined." (*Powers* v. *Theofel, supra.*)

Since the meeting of the executive committee at which Mr. Theofel was elected chairman, and the meeting of the county committee which was called for the purpose of amending the rules, no meeting of either committee has been held. In the meantime, however, the defendant, as chairman of the county committee, without calling that body in session, announced the appointment of eighteen additional members of the executive committee. The plaintiff, as chairman of the executive committee, has challenged the right of the defendant, as chairman of the county committee, to make such appointments at this time, and he also contends that as chairman of the county committee the defendant is not authorized to issue a call for a meeting of the executive committee in view of the provisions of rule VI, which read: " The executive committee shall meet at all times at the call of its chairman."

The first question to be considered, therefore, is whether the chairman of the county committee may at any time appoint eighteen additional members to the executive committee "*who need not necessarily be members of the county committee.*" As the executive committee is a standing committee of the county committee it is necessary to note the usual and peculiar functions of such a committee. And for that purpose common parliamentary rules in use by all deliberative assemblies in this country may be considered. (*Ostrom* v. *Greene*, 161 N. Y. 353.) In parliamentary law a committee may be appointed for one special occasion or it may be appointed to deal with all matters which may be referred to it during the life of the deliberative body. " In the latter case, it is called a 'standing committee.' " (Black Law Dict.)

The county committee of the Democratic party in Queens county, composed as it is of nearly 2,400 members, cannot conveniently attend to the matters which are incidental and necessary in the proper management of the affairs of the party in the county, and for this reason a smaller committee has been provided which is charged with the duty of performing the administrative and executive work of the county committee when that body is not in session. Its peculiar functions in this respect are expressed in subdivision (b) of rule VI, which reads: " The executive committee shall, immediately upon its appointment and at all times when the county committee is not actually in session, have, possess and exercise all the rights, privileges, powers and duties which the said county committee may have, possess and exercise." It is difficult, therefore, to understand why it did not occur to the framers of the rules that a provision would be invalid which permitted the appointment to the executive committee of persons who are not members of the county committee, because it is a universal rule and custom that standing committees as well as select committees of any deliberative or organized body are always composed of members of the body. But, moreover, in the case at hand the provision in question is in direct conflict with the statute which controls and regulates the organization of party committees.

Prior to the enactment of such legislation political party organizations in the eyes of the law were regarded as voluntary associations which could regulate and conduct their affairs in accordance with their constitution and by-laws. (*McKane* v. *Adams*, 123 N. Y. 609.) But reflecting a practically universal demand for comprehensive legislation upon the subject, the Legislature in its wisdom provided that the enrolled voters of the political parties should thenceforth control party affairs, and by statute it created the machinery to effectually accomplish that purpose. In dealing

with a question which arose under that statute Chief Judge PARKER said: " The dominant idea pervading the entire statute is the absolute assurance to the citizen that his wish as to the conduct of the affairs of his party may be expressed through his ballot and thus given effect, whether it be in accord with the wishes of the leaders of his party or not, and that thus shall be put in effective operation, in the primaries, the underlying principle of democracy, which makes the will of an unfettered majority controlling. In other words, the scheme is to permit the voters to construct the organization from the bottom upwards, instead of permitting leaders to construct it from the top downward." (*People ex rel. Coffey* v. *Democratic General Committee,* 164 N. Y. 335, 341.)

As a result of such legislation the character of party machinery was entirely changed. The statute required that each political party should have a county committee, and only one way was left open to gain membership in such committee, and that was by the suffrages of the enrolled members of the party, which were to be exercised at primary elections, which thenceforth were conducted at public expense. As was said by the Appellate Division in the Second Department: " It was intended to place responsibility for the party management and of party control of a locality in the hands of the duly enrolled electors thereof." (*People ex rel. McCarren* v. *Dooling,* 128 App. Div. 1, 4.)

The statute which regulates the organization of a county committee provides that every county committee " shall within fifteen days after its election meet and organize by the election of a chairman, treasurer and secretary, and such other officers as its rules may provide,   *   *   *.   Such officers shall be enrolled voters of the party but need not be members of such committees." (Election Law, § 15.) The rules which are now under consideration provide for the election by the county committee of a chairman, vice-chairman, treasurer and secretary (Rule III). By reason of the special provision in the statute such officers, even if they are not elected to the county committee by the votes of the enrolled members of the party, are nevertheless admitted to membership in that body by virtue of their election as officers of the committee. It follows, therefore, that if the rules of the party so provide, all of the officers of the county committee may be appointed to membership in the executive committee of that body. But as this is the only exception in the statute, it must be held that the county committee exceeded its powers when provision was made for the appointment of eighteen members to the executive committee " who need not necessarily be members of the county committee."

If the above views are correct, the question with respect to

the issuance of a call for a meeting of the executive committee will present no difficulty. It does not appear from the facts presented that the chairman of that committee has unreasonably refused to convene the committee. Under the rules he is authorized to issue all calls for meetings of the committee, and while he may not capriciously or unreasonably refuse to convene the committee and thereby paralyze that body to the detriment of the party, nevertheless in the absence of such a situation no one else is authorized to do so. The defendant, as chairman of the county committee, however, has no more power in the premises than any other member of the executive committee. His power as such chairman is found in the rule which authorizes him to appoint the members of the executive committee. When that power has been exercised his authority is *functus officio* so far as any control over the executive committee is concerned, except as it may be influenced by his individual vote as a member thereof. And this power does not again ripen until he is called upon to fill a vacancy which has been caused by the removal of a member in accordance with the provisions of rule VI.

The defendant in his answering affidavit calls attention to the fact that he has been chairman of the county committee for the past twelve years, and in his additional affidavit which was filed after the argument he states that the chairman of the executive committee " is now seeking the court to prevent any meeting of such committee so that he shall have the exclusive naming and designating of all candidates for the primary election this coming September." In view of Mr. Butler's long experience in party affairs this statement must have been made inadvertently. He must, indeed, know that neither the county committee nor the executive committee has any immediate duty to perform relative to the designation of candidates for party nominations. Such designations will be made by petitions which will be subscribed, verified and filed by enrolled voters of the party. (Election Law, §§ 134, 135.*) In other words, as has been said: " The scheme is to permit the voters to construct the organization from the bottom upwards, instead of permitting leaders to construct it from the top downwards." (*People ex rel. Coffey* v. *Democratic Committee, supra.*) And, furthermore, in order to emphasize the assurance that all citizens have equal rights at the primary election, it is provided that party funds may not be expended for primary purposes. (Election Law, § 19.) The primary election, however, will not be held until the seventeenth day of September next, and, therefore,

---

* Section 135 amd. by Laws of 1923, chap. 597.— [REP.

no designating petitions may be filed before the thirteenth day of August. (Election Law, § 140.) But after the primary election a party nomination of a candidate for election to fill a vacancy which occurred after the thirteenth day of August may be made by a majority vote of a quorum of the county committee. (Election Law, § 131, as amd.)

It will thus be seen that there is no immediate necessity which would justify a meeting of the executive committee which was not called by its chairman. There is ample time, however, within which a special meeting of the county committee may be called for the purpose of amending its rules or for the transaction of such other business as may be deemed advisable in accordance with the provisions of rule VII, and in view of the statements which were made upon the argument and which are reiterated in the plaintiff's affidavit the executive committee will be thereupon convened by its chairman. The motion will be granted and an order will be made in accordance with this opinion.