[820 NYS2d 332]

In the Matter of MICHAEL A. AVELLA, as a Registered Voter of
Albany County and Treasurer of the New York Republican
State Committee, et al., Respondents, v WILLIAM H. BATT,
as the Treasurer of Friends of David Soares, et al.,
Respondents, and JOHN KEST, as the Treasurer of the Work-
ing Families Party, Appellant.

Third Department, July 20, 2006

APPEARANCES OF COUNSEL

*Richard L. Brodsky, Elmsford, Jay R. Halfon*, New York City, and *Tracy Peel*, New York City, for appellant.

*Featherstonhaugh, Wiley, Cline & Cordo, L.L.P.*, Albany (*Stephen J. Wiley* of counsel), for respondents.

*William J. McCann Jr., New York State Board of Elections*, Albany, for New York State Board of Elections, respondent.

## OPINION OF THE COURT

Per Curiam.

Petitioners are five voters registered in Albany County. In September 2004, petitioners commenced this proceeding seeking, among other things, an order declaring that the Working Families Party (hereinafter WFP) violated Election Law § 2-126 by spending party funds to aid the campaign of David Soares in the Democratic primary election for Albany County District Attorney. Section 2-126 imposes a restriction on the expenditure of party funds, stating:

> "No contributions of money, or the equivalent thereof, made, directly or indirectly, to any party . . . or any moneys in the treasury of any party . . . shall be expended in aid of the designation or nomination of any person to be voted for at a primary election either as a candidate for nomination for public office, or for any party position" (Election Law § 2-126).

Supreme Court concluded that the WFP violated section 2-126 by spending $121,776.91 to promote Soares's campaign during the Democratic primary election and rejected the WFP's argument that the statute unconstitutionally inhibits its First Amendment rights. Noting that the primary election had already taken place, the court stated that its opinion would be forwarded to the Albany County District Attorney and the Attorney General to take any action that they deem appropriate. The WFP appeals.

■ Initially, we reject the WFP's arguments that petitioners lack standing and that this matter is not justiciable. Election Law § 16-114 (3) states that "any five qualified voters" may commence a proceeding in Supreme Court to "compel by order any person who has failed to comply . . . with any of the provisions of this chapter." According the language of the statute its usual and ordinary meaning (*see Matter of Orens v Novello*, 99 NY2d 180, 185-186 [2002]; McKinney's Cons Laws of NY, Book 1, Statutes § 232, at 392-393), petitioners had standing to commence this proceeding because they were indisputably five voters registered to vote in Albany County, the political subdivision conducting the election. Moreover, we note that petitioners do not seek to challenge the internal affairs of another party in asserting that Election Law § 2-126 prohibits a political party from using its funds to support a candidate in a primary election of *another* political party (*see* 1983 Ops St Bd of Elections No. 7). Rather, petitioners' challenge is directed "to a legislatively mandated requirement of the Election Law" that transcends the regulation of the internal affairs of a political party or the operating functions of a party and, thus, petitioners have standing (*Matter of Gross v Hoblock*, 6 AD3d 933, 935-936 [2004]; *see Matter of Breslin v Conners*, 10 AD3d 471, 473-474 [2004], *lv denied* 3 NY3d 603 [2004]; *cf. Matter of Koppell v Garcia*, 275 AD2d 587, 588 [2000]; *Matter of Stempel v Albany County Bd. of Elections*, 97 AD2d 647, 648 [1983], *affd* 60 NY2d 801 [1983]).

■ Further, while the primary election had concluded at the time that petitioners initiated this proceeding and, therefore, the proceeding is moot because Supreme Court could no longer compel compliance with Election Law § 2-126, we conclude that the exception to the mootness doctrine is applicable here. Courts "have discretion to review a case if the controversy or issue involved is likely to be repeated, typically evades review, and raises substantial and novel questions" (*Wisholek v Douglas*, 97 NY2d 740, 742 [2002]; *see Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714-715 [1980]). Here, the issue raised is important and novel, likely to recur and, most notably, will typically evade judicial review in light of the fact that the challenged expenditures are often made immediately before the primary election, as they were here, and may not be disclosed in campaign finance records until after the primary election has concluded (*see gen-*

*erally Rosario v Rockefeller*, 410 US 752, 756 n 5 [1973]). Accordingly, we decline to dismiss the petition as moot.[1]

Turning to the merits, we are unpersuaded by the WFP's argument that Supreme Court improperly determined that it provided financial support to Soares in violation of the statute. By its terms, Election Law § 2-126 prevents the expenditure of party funds "in aid of the designation or nomination of *any* person to be voted for at a primary election" (emphasis added). Contrary to the WFP's argument, the language of the statute is not directed solely at intraparty spending by party leadership on its own endorsed candidate. Rather, as respondent New York State Board of Elections has previously determined, the language of the statute is clear and unambiguous, and prohibits the expenditure at issue here—a party's use of its funds to support a candidate in a primary election of *another* political party (*see* 1983 Ops St Bd of Elections No. 7; *see also* 1986 Ops St Bd of Elections No. 1). More specifically, while a party may financially support its candidate in a general election "even though such candidate may be in a primary election contest of another party, . . . *such expenditures [may] not relate to the primary contest*" (1983 Ops St Bd of Elections No. 7 [emphasis added]).

■ Here, we agree with Supreme Court that the mailings sent out by the WFP prior to the primary election establish that it violated the statute by spending money to promote the candidacy of Soares in the Democratic primary election for the office of Albany County District Attorney. The WFP concedes that it spent approximately $129,000 on Soares's campaign from July 7, 2004 through September 24, 2004, and its financial disclosure filings reveal that approximately $122,000 of this was spent prior to the primary election. Although the WFP maintains that its expenditures related to only the general election, the mailings specifically reference the Democratic primary election instead of the general election and compare Soares only to Paul Clyne, the Democratic nominee, without mentioning any other candidates running in the general election. Given the

1. Given the procedural posture of petitioners' claim—i.e., the primary election had concluded and the WFP could not be enjoined from further expenditures of party funds at the time that the proceeding was commenced—we find no error in Supreme Court's waiver of the requirement that petitioners file an undertaking (*see* Election Law § 16-114 [4]; *see generally Capoccia v Brognano*, 126 AD2d 323, 327-328 [1987], *appeals dismissed* 70 NY2d 742, 743 [1987]; *cf. Rourke Devs. v Cottrell-Hajeck, Inc.*, 285 AD2d 805 [2001]).

language of the four mailings at issue, Supreme Court correctly determined that the WFP expended party funds in support of Soares's candidacy in the Democratic primary election in violation of Election Law § 2-126.

█ We agree with the WFP, however, that Election Law § 2-126, as applied here, unconstitutionally burdens its First Amendment rights of political expression and association.[2] It must be noted that section 2-126 is derived from legislation enacted at the turn of the twentieth century as part of a package of reform designed " 'to permit the voters to construct the [party] organization from the bottom upwards, instead of permitting leaders to construct it from the top downward' " (*Theofel v Butler*, 134 Misc 259, 263 [1929], *affd* 227 App Div 626 [1929], quoting *People ex rel. Coffey v Democratic Gen. Comm. of Kings County*, 164 NY 335, 342 [1900]). In particular, the predecessor to section 2-126 was designed "to emphasize the assurance that all citizens have equal rights at the primary election . . . [by] provid[ing] that party funds may not be expended for primary purposes" (*Theofel v Butler, supra* at 264). Since the time that the statute was enacted, the case law of the United States Supreme Court regarding the First Amendment implications of legislation regulating expenditures in connection with elections has evolved significantly. As explained below, expenditures by political parties in elections are now understood to constitute "core" First Amendment activities entitled to substantial protection. We agree with the WFP that, under this more recent case law, section 2-126 cannot withstand constitutional scrutiny and, accordingly, reversal in this regard is required here.

It is well settled that "[a] [s]tate indisputably has a compelling interest in preserving the integrity of its election process" and, thus, "may impose restrictions that promote the integrity of primary elections" (*Eu v San Francisco County Democratic Central Comm.*, 489 US 214, 231 [1989]). Indeed, the United States Supreme Court has repeatedly stated that "it is beyond question 'that [s]tates may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder' " (*Clingman v Beaver*,

---

**2.** The Attorney General was not notified of the WFP's challenge to the constitutionality of Election Law § 2-126 as required by Executive Law § 71 and CPLR 1012 (b). This Court has since given notification and the Attorney General has declined to intervene for purposes of defending the constitutionality of the statute.

544 US 581, 593 [2005], quoting *Timmons v Twin Cities Area New Party*, 520 US 351, 358 [1997]). Thus, when state electoral regulations—such as those imposing a deadline for voters to enroll in the party of their choice prior to voting in a primary— "place[ ] no heavy burden on" First Amendment rights, " 'a [s]tate's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions' " (*Clingman v Beaver, supra* at 593 [citation omitted] [noting that the prevention of party raiding is a legitimate interest that will justify imposition of party enrollment deadlines]; *see Rosario v Rockefeller*, 410 US 752, 760-762 [1973], *supra*).

A state's broad power to regulate elections, however, " 'does not extinguish the [s]tate's responsibility to observe the limits established by the First Amendment rights of the [s]tate's citizens' " (*Eu v San Francisco County Democratic Central Comm., supra* at 222, quoting *Tashjian v Republican Party of Conn.*, 479 US 208, 217 [1986]; *see California Democratic Party v Jones*, 530 US 567, 572-573 [2000]). And "the First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office"—whether that campaign takes place in a primary or general election (*Eu v San Francisco County Democratic Central Comm., supra* at 223). Particularly relevant here,

> "[a] political party's independent expression not only reflects its members' views about the philosophical and governmental matters that bind them together, it also seeks to convince others to join those members in a practical democratic task, the task of creating a government that voters can instruct and hold responsible for subsequent success or failure. The independent expression of a political party's views is 'core' First Amendment activity no less than is the independent expression of individuals, candidates, or other political committees" (*Colorado Republican Federal Campaign Comm. v Federal Election Comm'n*, 518 US 604, 615-616 [1996]).

Thus, regulations that impact a political party's capacity to communicate with the public are deemed to impose severe burdens and, as such, will not survive constitutional scrutiny unless they are narrowly tailored to serve a compelling state interest (*see id.* at 609; *Eu v San Francisco County Democratic Central Comm., supra* at 222-225; *see also Clingman v Beaver,*

*supra* at 586, 589-590; *Buckley v Valeo*, 424 US 1, 19-23, 39-45 [1976]). Because "virtually every means of communicating ideas in today's mass society requires the expenditure of money" (*Buckley v Valeo, supra* at 19), limits on independent expenditures—i.e., those that are not prearranged and coordinated with a candidate—have been consistently struck down by the United States Supreme Court (*see Randall v Sorrell*, 548 US —, —, 126 S Ct 2479, 2487-2491 [2006]; *McConnell v Federal Election Comm'n*, 540 US 93, 217-219, 221 [2003]; *Colorado Republican Federal Campaign Comm. v Federal Election Comm'n, supra* at 613-616; *Federal Election Comm'n v National Conservative Political Action Comm.*, 470 US 480, 493-501 [1985]; *Buckley v Valeo, supra* at 39-45). Such expenditure limitations have been invalidated on the ground that they " 'impose far greater restraints on the freedom of speech and association' than do limits on contributions and coordinated expenditures, . . . while 'fail[ing] to serve any substantial governmental interest in stemming the reality or appearance of corruption in the electoral process' " (*McConnell v Federal Election Comm'n, supra* at 221 [citations omitted]).

Here, the statute, on its face, prohibits *all* expenditures—whether coordinated or independent—by political parties in aid of candidates to be voted for at a primary election. It therefore prohibits "core" First Amendment activity and may be upheld only if it is narrowly tailored to advance a compelling state interest.[3] Petitioners and the Board of Elections contend that the statute "serves a substantial government interest in remov-

---

3. Petitioners argue in a conclusory fashion that the WFP coordinated its expenditures with Soares based solely on the timing of the mailings at issue and those paid for by the Friends of David Soares in support of Soares's candidacy in the Democratic primary election. As the WFP notes, however, Supreme Court made no finding of coordination, determining that petitioners' case reduces to the contention that Soares was the beneficiary of illegal activity—that is, activity in violation of Election Law § 2-126—on the part of the WFP in sending out the mailings. In any event, even if we were to conclude that the spending was coordinated and that, therefore, the statute need only be closely drawn to advance an important state interest (*see Buckley v Valeo, supra* at 25), *and* presuming that such an important state interest had been established herein, the statute is not "closely drawn" inasmuch as it prohibits all spending by parties in connection with primary elections regardless of amount or coordination with a candidate (*see Randall v Sorrell*, 548 US at —, 126 S Ct at 2496 [concluding that limits of $200 to $400 on coordinated spending by political parties on candidates for state office were too restrictive from a constitutional perspective and impermissibly "threaten[ ] harm to a particularly important political right, the right to associate in a political party"]).

ing both actual corruption and the appearance thereof from the electoral process" (*Matter of Baran v Giambra*, 265 AD2d 796, 797 [1999], *lv dismissed* 93 NY2d 1040 [1999]; *see* 1983 Ops St Bd of Elections No. 7; *Theofel v Butler*, 134 Misc 259, 264 [1929], *supra*) and urge us to uphold the statute on the ground that it does not prohibit a party's endorsement of a candidate for nomination (*see Matter of Horn v Regular Democratic Org. of Long Beach*, 59 Misc 2d 664, 666 [1969]).

With respect to the argument that the statute serves a compelling state interest, the United States Supreme Court has recently reaffirmed that a state's "need to prevent 'corruption and the appearance of corruption' " may "provide[ ] sufficient justification for [a] statute's contribution limitations, but it [does] not provide sufficient justification for . . . expenditure limitations" (*Randall v Sorrell*, 548 US at —, 126 S Ct at 2488, quoting *Buckley v Valeo, supra* at 25). Even those courts that have upheld expenditure limits have acknowledged that a state's interest in avoiding corruption and the appearance thereof in electoral politics is not a sufficiently compelling interest, standing alone, to support expenditure limits (*see Landell v Sorrell*, 382 F3d 91, 119 [2004], *revd sub nom. Randall v Sorrell*, 548 US —, 126 S Ct 2479 [2006]). Thus, we cannot accept that the asserted state interest justifies the expenditure *prohibition* imposed upon political parties by Election Law § 2-126.

To the extent that the Board of Elections relies upon its prior opinions to argue that the statute promotes the compelling state interests of preventing the interference of one party in another party's affairs and ensuring that all citizens who are enrolled in a particular party have equal rights at a primary election (*see* 1986 Ops St Bd of Elections No. 1; 1983 Ops St Bd of Elections No. 7; *see also Theofel v Butler, supra* at 264), its argument also fails. "A 'highly paternalistic approach' limiting what people may hear is generally suspect . . . , [and] it is particularly egregious where the [s]tate censors the political speech a political party shares with its members" (*Eu v San Francisco County Democratic Central Comm.*, 489 US 214, 223-224 [1989], *supra*), as the statute does here. In our view, the unsupported assertions that permitting a political party to spend money in communicating with the public regarding candidates running in primary elections will lead to interparty manipulation and the control of the primary process by party machines do not reflect compelling state interests sufficient to support the severe burden imposed upon parties' First Amendment rights by the statute at issue here.

Moreover, even if we were to accept that petitioners and the Board of Elections had demonstrated a compelling state interest herein, it cannot be said that a statute imposing a blanket prohibition on all expenditures by a political party is narrowly tailored toward the goal of removing corruption from the electoral process. Again, we note that "virtually every means of communicating ideas in today's mass society requires the expenditure of money" (*Buckley v Valeo*, 424 US 1, 19 [1976], *supra*). We cannot accept the implicit argument that the statute does not burden political parties' First Amendment rights because they remain free to endorse candidates for a primary election without spending money to communicate that endorsement to the public. Instead, the statute impermissibly and "necessarily 'reduc[es] the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached' " (*Randall v Sorrell*, 548 US at —, 126 S Ct at 2481, quoting *Buckley v Valeo, supra* at 19). In short, because Election Law § 2-126, as applied here, is not narrowly tailored to advance a compelling state interest and therefore cannot withstand constitutional scrutiny, reversal in this regard is required.

MERCURE, J.P., CREW III, MUGGLIN, ROSE and KANE, JJ., concur.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as partially granted petitioners' application; petition dismissed in its entirety; and, as so modified, affirmed.