OPINION OF THE COURT
Daniel R. Palmieri, J.
This case concerns newly-enacted sections of the Election Law concerning a ban on coordination between political action committees in the aid of persons seeking political office. More specifically, and as is relevant here, the statutes at issue, enacted and made effective in September 2016, bar financial contributions from one such committee to another and provide an enforcement mechanism therefor. They followed on the heels and were part of comprehensive legislation designed, as stated by Governor Cuomo in his August 24, 2016 Approval Memorandum,
“to reverse the indisputably unfair protections afforded to corporate interests by the Citizens United v Federal Elections Committee decision. Not only will New York now have the strictest anti-coordination law in the nation, this bill will, for the first time, provide participants in New York’s electoral process with a clear and meaningful ethical line to follow regarding campaign coordination activities . . .
“It will also implement various measures to shed light on the dark money that runs rampant through our political process. Finally, it will strengthen enforcement through increased penalties for egregious lobbying violations” (L 2016, ch 286, Bill Jacket, reprinted in 2016 McKinney’s Session Law News of NY, No. 5 at A-291 [Oct. 2016]).
The question for this court, apparently one of first impression, is whether the enforcement of the new provisions barring payments can be sought by an adversary candidate or by another private party, and not just the State. The court answers that question in the negative, and therefore denies and dismisses this petition.
Petitioner moves (motion sequence No. 001) for an order, pursuant to articles 14 and 16 of the Election Law, (1) declaring that respondents New Yorkers Together (NYT) and Teachers for Todd (TFT) are in violation of the independent expendi *206 ture laws of Election Law § 14-107 (a) (1)[1] by receiving/giving a contribution from an independent expenditure committee; (2) cancelling the registration of respondents NYT and TFT as independent expenditure committees; and (3) a preliminary injunction against respondents NYT and TFT regarding spending or fundraising. Respondent NYT moves (motion sequence No. 002) for an order, pursuant to Rules of the Court of Appeals (22 NYCRR) § 520.11, permitting Laurence E. Gold to appear pro hac vice on behalf of respondent NYT in this matter. Respondent TFT cross-moves (motion sequence No. 003) for an order, pursuant to CPLR 404, 3211 (a) (2), (7) and (8) and 3212, dismissing the petition. The motions and cross motion are decided as set forth herein.
As noted above, petitioner Christopher McGrath was an unsuccessful candidate for the New York State Senate, Ninth Senate District, in the general election held on November 8, 2016. He commenced this proceeding shortly before the election by bringing on an order to show cause with a verified petition. While initially refused by this court on November 4, 2016, the order to show cause was signed on November 5, 2016 by Justice Mark C. Dillon of the Appellate Division, Second Department, who granted an order, pending the determination of petitioner’s motion (motion sequence No. 001), which
“temporarily restrained and enjoined respondent NYT from spending, transferring, encumbering or donating any monies in the Ninth New York State Senate District race to be decided in the election scheduled for November 8, 2016, and (2) temporarily restrained and enjoined respondent TFT from making any contributions to any entity in contravention of Election Law § 14-107 (a) (1) [sic] and from transferring or donating any monies to any political committee intended by the donor/ transferor or donee/transferee to be used in the Ninth New York State Senate District race to be decided in the election scheduled for November 8, 2016.”
Justice Dillon directed that copies of the order to show cause, together with all of the ancillary papers upon which the order *207 was granted, be served upon respondents in person, or alternatively, at the option of petitioner, served upon any party herein by electronic transmission on or before the close of business on November 7, 2016 at an email address or fax number maintained by such respondents.
Petitioner has failed to provide this court with any proof that the order to show cause, or the verified petition on which it is based, was served on respondents as directed. However, respondent NYT served an answer on November 15, 2016 and respondent TFT filed an answer to the verified petition dated November 15, 2016, filed November 21, 2016.[2]
Respondent TFT’s answer includes an affirmative defense of lack of personal jurisdiction. While the affidavit of Paul Egan, the treasurer of respondent TFT, asserts that TFT has not been served with a copy of the verified petition, he admits that on November 4, 2016, he received an email from counsel for petitioner with a copy of the verified petition. Given this admission, respondent TFT’s defense of lack of personal jurisdiction is without merit, as service was made as directed by Justice Dillon (see also CPLR 2103 [f] [2]).
The verified petition alleges that on October 27, 2016, respondent TFT made a contribution[3] to respondent NYT in contravention of Election Law § 14-107 (a) (1) (sic). The verified petition further alleges that, upon information and belief, respondent NYT intends and will use the contribution in an effort to defeat petitioner in the general election held on November 8, 2016.
Since respondent NYT was temporarily restrained from spending, transferring, encumbering or donating any monies, and since respondent TFT was temporarily restrained from making any contributions to be used in the Ninth New York State Senate District race to be decided in the election scheduled for November 8, 2016, and since that election has concluded, petitioner no longer has any viable interest in this matter and this matter is now rendered moot (Matter of Reed v Walsh, 101 AD3d 1661 [4th Dept 2012]).
*208 Even if an exception to the mootness doctrine had been raised herein, petitioner still would not be entitled to the relief which he seeks in his verified petition. Insofar as petitioner seeks a preliminary injunction against respondents NYT and TFT regarding spending or fund raising, a preliminary injunction is considered a drastic remedy which should be used cautiously. In order to establish entitlement to a preliminary injunction, petitioner must establish: (1) a likelihood of ultimate success on the merits; (2) irreparable injury absent the granting of injunctive relief; and (3) a balancing of the equities in his favor (CPLR 6301; Doe v Axelrod, 73 NY2d 748 [1988]; W.T. Grant Co. v Srogi, 52 NY2d 496 [1981]). The purpose of a preliminary injunction is to preserve the status quo and petitioner must satisfy each requirement with clear and convincing evidence (County of Suffolk v Givens, 106 AD3d 943 [2d Dept 2013]). Even if this court were to find that petitioner had a likelihood of success on the merits and that the equities balanced in his favor, petitioner cannot demonstrate that he will suffer an irreparable injury because the funds at issue were restrained and never spent on the campaign and the subject election in which he was a candidate has concluded. Accordingly, a preliminary injunction is not warranted herein.
Further, even assuming that the court found a violation of Election Law § 14-107-a, it cannot agree that petitioner can seek cancellation of the registration of respondents NYT and TFT for the alleged violation of Election Law § 14-107-a (1), as such relief simply is not provided for in the relevant statutes.
Section 14-107-a (1), which became effective on September 23, 2016, provides that “[a]n independent expenditure committee shall not contribute to any candidate, constituted committee, political committee, or party committee.”
Section 14-126 (3-a), which also became effective on September 23, 2016, provides that
“[a]ny person who, acting as or on behalf of an independent expenditure committee or a political action committee, knowingly and willfully violates the provisions of section 14-107-a of this article shall be subject to a civil penalty, up to one thousand dollars or up to the cost of the communication, whichever is greater, to be recoverable in a special proceeding or civil action to be brought by the state board of elections.”
A court’s power to intervene in election matters is circumscribed by the powers expressly granted by statute (Matter of *209 Korman v New York State Bd. of Elections, 137 AD3d 1474 [3d Dept 2016]). Here, the penalty provided by law is limited to a fine, which may be imposed by the court only in a special proceeding or civil action brought by the State Board of Elections, after a finding of a knowing and willful violation. This is consistent with the balance of section 14-126, which, in the case of other types of violations of article 14, provides for fines and refunds in proceedings to be brought by the State Board of Elections or its enforcement counsel. This section also includes certain criminal penalties. The legislature thus has provided for a comprehensive enforcement regime that simply does not include a private right of action by an aggrieved candidate, or by any other private party, for a violation of the subject statute.
Where, as here, a statute includes an elaborate enforcement provision, a court should not assume that the legislative body intended to authorize by implication additional remedies for private citizens suing under that statute (Middlesex County Sewerage Authority v National Sea Clammers Assn., 453 US 1, 13-15 [1981]; Northwest Airlines, Inc. v Transport Workers, 451 US 77, 93-94 [1981]). Further, a general rule in the construction of statutes is that where a new duty is imposed by a statute, and a new remedy is given by that same statute for its violation, the remedy given is exclusive (Drinkhouse v Parka Corp., 3 NY2d 82, 88 [1957]; see also Sheehy v Big Flats Community Day, 73 NY2d 629, 633-636 [1989]; Biaglow v Elite Prop. Holdings, LLC, 140 AD3d 814 [2d Dept 2016]). Consequently, in view of the sections of the Election Law cited, the court concludes that the relief sought by petitioner against respondents NYT and TFT is not available.
Since petitioner has failed prima facie to establish his entitlement to the relief sought in his verified petition, the petition (motion sequence No. 001) is denied. The cross motion to dismiss (motion sequence No. 003) is granted.
With regard to the motion (motion sequence No. 002) of respondent NYT for an order permitting Laurence E. Gold to appear pro hac vice on its behalf in this matter, Rules of the Court of Appeals (22 NYCRR) § 520.11 provide, in relevant part, that an attorney who is a member in good standing of the bar of another state or district may be admitted pro hac vice, in the discretion of the court, if he is associated with an attorney who is a member in good standing of the New York bar who shall be attorney of record in the matter. Laurence E. Gold has offered proof that he is a member in good standing of *210 the bar of the District of Columbia and he has averred that he is associated with Walter M. Meginniss, Jr., a member in good standing of the New York State bar who is attorney of record in this matter. Accordingly, the motion is granted notwithstanding this court’s dismissal of the proceeding, in view of the possibility that petitioner may choose to pursue appellate remedies.
All contentions not discussed either are unnecessary to the result reached here or are without merit. All requests for relief not specifically addressed are denied.

. This statutory citation appears to be a typographical error as there is no Election Law § 14-107 (a) (1). It appears that petitioner is actually referring to Election Law § 14-107-a (1). “Todd” refers to State Senator Todd Kaminsky, who defeated petitioner in the general election in the Ninth Senate District.

. The answer was read online. The court was not provided with a paper copy.

. While the verified petition alleges that respondent TFT made two separate $300,000 contributions to respondent NYT on October 27, 2016, respondents allege that there was only one such $300,000 contribution, which appeared on both a daily and a weekly report to the State Board of Elections. If only a single $300,000 contribution was made by TFT, then there is no violation of the disclosure requirements of Election Law § 14-107.