OPINION OF THE COURT
L. Michael Mackey, J.
Petitioners commenced this election law proceeding by order to show cause on May 16, 2017 seeking, inter alia, injunctive *235 and declaratory relief against respondent Christine Pellegrino, a candidate for New York State Assembly, 9th Assembly District, and the various respondent organizations aiding her campaign in a special election scheduled for May 23, 2017. As detailed below, petitioners claim that several respondents violated campaign finance laws set forth in Election Law article 14, such that petitioners seek an order (1) declaring that respondent New Yorkers for a Brighter Future made a prohibited contribution to Teachers for Christine; (2) directing respondent New Yorkers for a Brighter Future “to adhere to the request of the New York State Board of Elections and amend its registration documents . . . indicating a proper committee type”;[1] (3) directing respondent Teachers for Christine to refund an allegedly improper contribution to New Yorkers for a Brighter Future; (4) enjoining Teachers for Christine “to prevent expenditure or future expenditure of prohibited funds”; and (5) enjoining respondent New Yorkers for a Brighter Future “from spending or fund-raising until they have filed registration documents in accordance with article 14 of the election law.” Petitioners sought a temporary restraining order enjoining respondent Teachers for Christine from accepting or transferring any monies and enjoining respondent New Yorkers for a Brighter Future from transferring, expending or donating any monies in the special election; the Part I Justice (Platkin, J.) denied the request for a temporary restraining order when it was presented on May 16, 2017 and this matter was scheduled for a hearing on May 22, 2017.
Respondents Christine Pellegrino and Friends of Christine Pellegrino (collectively Pellegrino) answered and appeared, through counsel, asserting various affirmative defenses including standing, lack of subject matter jurisdiction and failure to state a cause of action. At oral argument, Pellegrino moved to dismiss on the basis that the petition fails to specifically seek relief against her. Petitioners conceded Pellegrino was named solely to assure the presence of necessary parties and that the petition seeks no concrete relief against Pellegrino, such that the petition against Pellegrino is hereby dismissed.
Respondents Voice of Teachers for Education/Committee on Political Education of the New York State United Teachers, *236 New Yorkers for a Brighter Future and Teachers for Christine (collectively respondents) answered the petition and moved to dismiss on various grounds, including that (1) petitioners lacked standing; (2) the court lacks subject matter jurisdiction; (3) the New York State Board of Elections (BOE) has primary jurisdiction, such that the court should defer to the administrative agency in the first instance to adjudicate any issue raised in the petition; and (4) injunctive relief should be denied on the merits based upon First Amendment grounds implicated by the construction of Election Law article 14 urged by petitioners. Respondents also submitted, in admissible form, a detailed affidavit from a person with knowledge of the applicable committee descriptions and filings, citing the manner in which each complies with the applicable statutes, regulations and administrative guidance of the BOE.
Respondent BOE appeared at oral argument through counsel representing the interests of the Democratic and Republican Commissioners constituting the BOE, respectively, who contend, as relevant here, that petitioners have standing to sue. The Democratic Commissioners oppose injunctive relief to vindicate any rights implicated here. The enforcement counsel of the BOE separately appeared at oral argument and contends that the enforcement counsel has exclusive statutory right to enforce the law at issue, such that petitioners lack authority to sue.
For reasons detailed below, including petitioners’ lack of authority to bring this proceeding in the absence of a private right of action and because the statute upon which petitioners rely does not authorize the relief sought, the relief demanded in the petition is denied and the petition is dismissed.
This proceeding is based upon newly-enacted Election Law provisions that prohibit coordination between political action committees to assist candidates seeking political office. (Election Law § 14-107-a; see Matter of McGrath v New Yorkers Together, 55 Misc 3d 204 [Sup Ct, Nassau County 2016].) The statute prohibits independent expenditure committees from contributing to any candidate, constituted committee, political committee or party committee. (Election Law § 14-107-a [1].) It further prohibits a political action committee from making independent expenditures or contributing to any independent expenditure committee when such committee has “common operational control” as expressly defined by statute. (Election Law § 14-107-a [2] [a].) Candidates and authorized committees *237 are prohibited from contributing to an independent expenditure committee that is spending in a manner to benefit the candidate. (§ 14-107-a [2] [b].) The statute implicated here was enacted by chapter 286 of the Laws of 2016, which sought to define which activities constitute prohibited coordination of campaign spending and to demarcate “between candidates and unlimited expenditures and . . . provide a much-needed reform to New York’s campaign finance system.” (Assembly Introducer’s Mem in Support, Bill Jacket, L 2016, ch 286, 2016 McKinney’s Session Laws of NY at 1404.) The bill also addressed lobbying violations and imposed disclosure requirements for political consultants.
In essence, petitioners claim that on May 5, 2017, respondent New Yorkers for a Brighter Future made a prohibited contribution in the amount of $200,000 to Teachers for Christine, allegedly an independent expenditure committee, and that this contribution was in violation of Election Law § 14-107-a. Petitioners seek an order requiring respondent Teachers for Christine to refund $200,000 to New Yorkers for a Brighter Future and further requiring respondent New Yorkers for a Brighter Future to “amend its registration documents” filed with the BOE. In opposition, the respondents against whom this relief is sought have detailed the manner in which the respondent organizations have both registered and operated in compliance with the provisions of the Election Law. The court need not decide this issue, however, because petitioners have not demonstrated authority to seek judicial review or that this court has jurisdiction to grant the relief requested.
Respondents’ challenge to petitioners’ ability to bring suit raises the related issues of capacity and standing. “ ‘Capacity to sue is a threshold matter allied with, but conceptually distinct from, the question of standing. As a general matter, capacity concerns a litigant’s power to appear and bring its grievance before the court.’ ” (Matter of Graziano v County of Albany, 3 NY3d 475, 478-479 [2004], quoting Silver v Pataki, 96 NY2d 532, 537 [2001].) “Capacity, or the lack thereof, sometimes depends purely upon a litigant’s status” particularly when the litigant’s right to sue depends on “enabling legislation or some other concrete statutory predicate.” (Community Bd. 7 of Borough of Manhattan v Schaffer, 84 NY2d 148, 155-156 [1994]; see also Matter of Parete v Turco, 21 AD3d 691 [3d Dept 2005] [petitioner lacked capacity based upon statutory limits on persons allowed to sue under Election Law § 16-102].) *238 On the other hand, the standing inquiry focuses on whether the party who is bringing suit is a proper party to request an adjudication of the suit, and requires a plaintiff to show “injury in fact” (i.e. actual harm by the challenged action) and that such injury falls within the zone of interests sought to be protected by the statute under which the plaintiff sues. (Matter of Graziano v County of Albany, 3 NY3d at 479, citing New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207 [2004].) “Without both capacity and standing, a party lacks authority to sue.” (Graziano, 3 NY3d at 479.) Petitioners here lack capacity and standing based upon the statutory text that reserves authority to vindicate violations to the BOE, their inability to show concrete injury, and failure to demonstrate that their claimed injury falls within the zone of interest sought to be protected by Election Law § 14-107-a.
In order to establish standing and capacity, petitioners are required to demonstrate that a private right of action is implied by the statute that prohibits the political activity about which petitioners complain. The statutory prohibition of spending by independent expenditure committees and political action committees, in certain circumstances, is defined in Election Law § 14-107-a, which itself is found in Election Law article 14, entitled “Campaign Receipts and Expenditures.” Article 14 constitutes a comprehensive statutory scheme to regulate campaign contributions, communications, limitations on spending, and other aspects of campaign finance. (Election Law § 14-100 et seq.) Section 14-126 (“Violations; penalties”) establishes an enforcement mechanism for article 14 violations, including failing to file a required statement, unlawfully accepting contributions that exceed stated limits, knowingly failing to identify required independent expenditures, and making a contribution that exceeds monetary limits. (Election Law § 14-126.) With the exception of the provisions that define willful violations that may constitute a crime, all other violations of section 14-126 may be enforced in a special proceeding or civil action to be brought by the BOE chief enforcement counsel or, in some instances, by the BOE. (Election Law § 14-126 [1] [a]; [2], [3], [3-a].) Section 14-126 does not authorize a private right of action by any other person.
A private right of action should not be implied from a statute if it is incompatible with enforcement mechanisms chosen by the legislature over some other aspect of the overall statutory scheme. (Sheehy v Big Flats Community Day, 73 NY2d 629 *239 [1989].) In determining whether a statute gives rise to an implied private right of action, a court must consider (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose behind the statute; and (3) whether creation of such a right would be consistent with the legislative scheme. (Id.; Mark G. v Sabol, 93 NY2d 710, 719 [1999]; People v Grasso, 42 AD3d 126 [1st Dept 2007].) “Because of the Legislature’s plenary authority over its choice of goals and the methods to effectuate them, ‘a private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature or with some other aspect of the over-all statutory scheme.’ ” (People v Grasso, 42 AD3d at 136-137, quoting Sheehy, 73 NY2d at 634-635.) Where the legislature has made express provision for a civil remedy, courts should ordinarily not entertain a different remedy with broader coverage. (Sheehy, 73 NY2d at 636.) Petitioners here cannot demonstrate that any of the factors outlined in Sheehy v Big Flats Community Day weigh in favor of finding an implied private right of action for petitioners to obtain any relief requested in the petition. First, petitioners have not demonstrated that the statute was enacted to particularly benefit them; instead, the purpose of the statute, as relevant here, was to promote campaign finance disclosure and regulation of certain committees by the BOE and its enforcement counsel, a purpose that is clearly stated in the text of the statute. As set forth below, whereas other provisions of the Election Law expressly confer standing upon aggrieved candidates, party chairs and committees, or “five qualified voters,” for example, the legislature reserved enforcement of the newly-enacted anti-coordination activities to the BOE and/or its enforcement counsel. Thus, petitioners have not demonstrated that recognition of a private right of action would promote the legislative purpose behind the statute. Moreover, a private right of action to compel a refund of an allegedly improper contribution on the eve of an election, together with injunctive relief, cannot be construed as promoting the legislative purpose behind the statute when the statute does not authorize such extraordinary relief. Finally, creation of such a right would be inconsistent with the legislative scheme, the purpose of which is clearly divined in the statutory text.
The text of the statute, when read in the context of the remainder of article 14, evinces a clear legislative intent to *240 confer exclusive authority upon the BOE or its enforcement counsel to seek redress in Supreme Court for violations of the anti-coordination statute. Additionally, the statute which confers upon the BOE or its enforcement counsel the authority to enforce also limits the penalties for civil violations to civil penalties in specified amounts. (Election Law § 14-126 [1], [2], [3], [3-a].) The statute does not contemplate (1) private action by other parties, (2) injunctive relief, or (3) a judicial declaration requiring a violator to refund an unlawful contribution. This construction of article 14 is consistent with other sections of the Election Law that confer a private right of action upon, inter alia, a candidate or “any five qualified voters” to compel the filing of a statement of campaign receipts, expenditures or contributions. {See Election Law § 16-114.) The fact that the legislature has expressly authorized candidates or voters to commence a proceeding in Supreme Court to vindicate a statutory directive that requires parties to file campaign finance statements in some instances, but decided not to confer authority on private actors to enforce other provisions of article 14, supports the court’s construction of section 14-107-a. Other courts confronting this issue have likewise found that the authority to seek enforcement of section 14-107-a rests exclusively, by statute, with the BOE and its enforcement counsel. (Matter of McGrath v New Yorkers Together, 55 Misc 3d at 209 [“where a new duty is imposed by a statute, and a new remedy is given by that same statute for its violation, the remedy given is exclusive” (citations omitted)]; Matter of New York State Republican Comm. v New Yorkers Together, Sup Ct, Nassau County, Oct. 26, 2016, index No. 07569/2016 [unreported decision annexed as exhibit A to respondents’ notice of motion to dismiss], appeal dismissed 2016 NY Slip Op 90261 [U] [2d Dept 2016],)[2]
Petitioners rely upon Election Law §§ 16-100 and 16-114 (3) to support their contention that they have standing to bring this proceeding and that the court has jurisdiction to decide it. *241 However, petitioners’ argument is misplaced. “Any action Supreme Court takes with respect to a general election challenge must find authorization and support in the express provisions of the [Election Law] statute.” (Matter of Delgado v Sunderland, 97 NY2d 420, 423 [2002] [internal quotation marks and citations omitted]; Matter of Korman v New York State Bd. of Elections, 137 AD3d 1474 [3d Dept 2016], lv denied 27 NY3d 903 [2016], citing Matter of Scaringe v Ackerman, 119 AD2d 327 [3d Dept 1986], affd on op below 68 NY2d 885 [1986].)
“In election cases, ‘[t]he field of [the court’s] powers is limited to the specified matters’ and the right to judicial redress ‘depends on legislative enactment, and if the [L]egislature as a result of fixed policy or inadvertent omission fails to give such privilege, [courts] have no power to supply the omission.’ ” (Matter of New York State Comm. of the Independence Party v New York State Bd. of Elections, 87 AD3d 806, 810 [3d Dept 2011] [citations omitted] [holding that petitioners who were not expressly conferred standing by Election Law § 16-102 could not seek redress under that section], lv denied 17 NY3d 706 [2011].)
In the realm of statements of campaign receipts, expenditures and contributions, “five qualified voters” like petitioners are conferred with standing to commence a proceeding in Supreme Court only to compel a required party to file such a statement. (Election Law § 16-114.) Here, this statute expressly states that a proceeding to compel the filing of a disclosure statement may be instituted by “any candidate!,] . . . any five qualified voters or by the state or other board of elections.” (Election Law § 16-114 [1].) This statute demonstrates that the legislature purposefully distinguished between proceedings to compel disclosure of campaign spending/contributions and proceedings to penalize unauthorized spending under article 14, and made a policy choice about which parties are legally entitled to seek each type of relief. Here, petitioners are not seeking a judicial mandate that a noncompliant candidate or committee file a disclosure statement of receipts, expenditures and contributions, but instead seek an order restraining campaign contributions and spending and declaring campaign spending unlawful, remedies that are not authorized by sections 16-114, 14-107-a or 14-126 and may not be implied therefrom.
The precedent upon which petitioners rely, Matter of Avella v Batt (33 AD3d 77 [3d Dept 2006]), does not require a different *242 result. Matter of Avella involved a challenge to Election Law § 2-126, which prohibited political parties from using their funds to support a candidate in the primary election of another political party. Unlike article 14, Election Law § 2-126 (which was declared unconstitutional in Matter of Avella) was not part of a comprehensive statutory scheme in which the legislature had expressly conferred authority for enforcement upon an administrative agency, but rather constituted a solitary statute that did not express or imply any limitation on rights of action. Additionally, unlike the statute in Matter of Avella, the statute at issue here expressly circumscribes remedies for violations of the article 14 filing requirements to civil penalties, i.e., fines or the cost of prohibited communications to be pursued alternatively by the chief enforcement counsel in a court proceeding or imposed directly by the BOE, depending upon the specific violation alleged. Accordingly, because the legislature has provided for a comprehensive enforcement mechanism that does not include a private right of action by an aggrieved candidate, or by any other private party, for a violation of the statute, and because petitioners have failed to demonstrate that the court may exercise jurisdiction over a proceeding to compel transfer of campaign contributions or to enjoin such contributions, the petition must be dismissed.
Based upon the foregoing, the request for a preliminary injunction also must be denied.
“A preliminary injunction may be granted under CPLR article 63 when the party seeking such relief demonstrates: (1) a likelihood of ultimate success on the merits; (2) the prospect of irreparable injury if the provisional relief is withheld; and (3) a balance of equities tipping in the moving party’s favor.” (Doe v Axelrod, 73 NY2d 748, 750 [1988], citing W.T. Grant Co. v Srogi, 52 NY2d 496 [1981].)
Because preliminary injunctions prevent litigants from taking actions that they are otherwise legally entitled to take in advance of adjudication on the merits, they should be issued cautiously and in accordance with appropriate procedural safeguards. (Uniformed Firefighters Assn. of Greater N.Y. v City of New York, 79 NY2d 236 [1992].) Courts do not have “inherent authority” to issue preliminary injunctions either to protect the jurisdiction of an administrative agency adjudicating a dispute or to prevent actions which could render the agency’s determination moot. {Id.) A party seeking a preliminary injunction is required to post an undertaking in an *243 amount to be fixed by the court and this requirement may not be waived. (Rourke Devs. v Cottrell-Hajeck, Inc., 285 AD2d 805 [3d Dept 2001].)
Based upon the court’s findings concerning the threshold issues of standing, capacity and jurisdiction, petitioners do not have a likelihood of success on the merits. To the contrary, construction of the applicable statutes shows that petitioners are precluded from seeking the relief in the petition. Nor have petitioners demonstrated that the equities favor an injunction, particularly when such relief would restrain the First Amendment rights of respondents. (See New York Progress & Protection PAC v Walsh, 733 F3d 483 [2d Cir 2013].) Thus, petitioners’ request for a preliminary injunction is also denied. The request for a declaratory judgment similarly is denied based upon the foregoing determination of threshold issues of standing, capacity, and jurisdiction. The court need not address the other issues raised in the petition or respondents’ motion to dismiss based upon the foregoing.
Accordingly, it is hereby ordered and adjudged that the relief requested in the petition is hereby denied and the petition is dismissed, without costs.

. The record is devoid of any administrative request or order by the Board seeking an amended registration statement. Paragraph 81 of the petition seeks an order “to correct the Board’s decision” but does not annex or particularize any administrative decision such that the court need not analyze whether this claim is properly framed as an article 16 proceeding or whether petitioners have standing to challenge such an order (if it exists).

. Though the BOE contends that there is a private right of action, lest there be lack of other recourse, the BOE emergency and final regulations implementing chapter 286 of the Laws of 2016 closely follow the text of the statute and similarly reserve to the BOE and its enforcement counsel the right to commence an action for civil penalties in Supreme Court. (See 9 NYCRR 6200.10 [eff Apr. 26, 2017].) No party has supplied any legislative history supporting a private right of action. The BOE enforcement counsel argues that the statute reserves enforcement remedies to the civil penalties specified by statute upon action by the enforcement counsel.